LENA SCHMIDT AND ELSIE S. FISCHER, PLAINTIFFS-
APPELLANTS, v. BOARD OF ADJUSTMENT OF THE
CITY OF NEWARK, NEW JERSEY, C. ALFRED BATES,
ZONING ENFORCEMENT OFFICER OF NEWARK, AND
THE CITY OF NEWARK, DEFENDANTS-RESPONDENTS.

Argued February 18, 1952—Decided May 5, 1952.

408

*Mr. Joseph Weintraub* argued the cause for appellants (*Mr. Charles S. Okin,* attorney).

*Mr. Joseph A. Ward* argued the cause for respondents (*Mr. Charles Handler,* attorney).

The opinion of the court was delivered by

HEHER, J. The appeal concerns the propriety of the action taken by the local board of adjustment refusing plaintiffs leave to use their lands at the northeast corner of Lyons Avenue and Clinton Place, Newark, for the operation of a gasoline service station. The ruling was sustained by the Superior Court on a review in lieu of the prerogative writ of *certiorari.*

Proceeding on the hypothesis that "gasoline or oil stations, automobile filling and cleaning stations and public garages,

while necessary, may be inimical to the public safety and general welfare if located without the due considerations of conditions and surroundings," Section 10 of the municipal zoning ordinance ordains that no permit for such use shall issue "except upon application first made to the Board of Adjustment," which is empowered, after hearing "in the same manner and under the same procedure" as in the case of "exceptions" to the terms of a zoning ordinance, "to recommend in writing" to the local governing body that a permit for such use be granted "if, in its judgment, it will not be detrimental to the health, safety and general welfare of the community, and is reasonably necessary for the convenience of the community." A "public garage" is forbidden within a block of a school, hospital, church, orphan asylum, theater or opera house, public library or a public art museum.

The Superior Court sustained this section of the ordinance as against the challenge of constitutional insufficiency, but found that the board of adjustment had failed "to make the findings required" by that provision and *R. S.* 40:55–39, as amended by *L.* 1948, *c.* 305, *p.* 1223, and *L.* 1949, *c.* 242, *p.* 779, and remanded the cause for further proceedings to that end if plaintiffs should be so advised.

It is now urged: (a) that the ordinance in this respect constitutes an abortive exercise of the zoning power, "in that it fails to zone the city for the purpose of service stations, by prescribing the districts in which they may be erected"; (b) that if it be deemed an exertion of the general police power "apart from zoning," there is no statute which "authorizes the governing body to delegate the exercise of the police power to the board of adjustment," which performs a *quasi*-judicial rather than a legislative function in respect of the right to a variance "from the terms of an ordinance which in fact zones," and therefore the power to "act finally" is nondelegable; (c) that considered as an exercise of the general police power, there is no provision for action by the governing body, and, since an affirmative recommendation by

the board of adjustment "does not carry with it a right to obtain a permit," it is "an incomplete act of legislation" and "invalidly operates to prevent the erection of service stations throughout the city"; and (d) that the particular provision does not provide "a standard for the guidance of the board of adjustment in giving its advisory opinion" and "no standard whatever" to control the governing body "in acting upon a recommendation" of the former, and so it is vicious and nugatory whether considered as a "zoning ordinance" or an exercise of "other police power."

The case of *Schnell v. Township Committee of Ocean*, 120 *N. J. L.* 194 (*Sup. Ct.* 1939) is read as requiring the governing body itself to "exercise the reserve power to deal with service stations" as a non-delegable function. It is said that "there remains no reason why" such facilities "should be outside the statutory scheme of prescribed districts and prescribed uses therein," and there is "no more reason to limit the number of stations in a business zone than there would be to limit the number of food markets or restaurants"; and that if the doctrine of the *Schnell* case "is to be continued," then the final authority should reside in the governing body, "circumscribed by a declared standard," with the role of board of adjustment purely advisory.

The questions thus posed call for a reexamination of fundamental principles and the nature of the statutory exercise of the zoning power, in particular the functions of the local board of adjustment.

■ The amendment of the State Constitution of 1844 adopted at a special election held on September 20, 1927 (*Article IV, Section VI, paragraph 5*) did not invest the Legislature with authority not theretofore within its keeping. By *Article III, paragraph 1* and *Article IV, Section I, paragraph 1* of that Constitution, the people of the State granted to the Legislature full sovereign authority except as therein limited; and this comprehended the police power, *i. e.*, the inherent right of sovereignty so to order the affairs of the people as to serve the common essential need. There is no

*residuum* of sovereign power, apart from the police, invoked by this amendment for the enlargement of the general legislative function as theretofore laid down in the organic law. The police power does not have its genesis in a written constitution. It is an indispensable attribute of our society, possessed by the state sovereignties before the adoption of the Federal Constitution. *Mayor, &c., of the City of New York v. Miln,* 11 *Pet.* 102, 9 *L. Ed.* 648 (1837). *Vide Constitution of* 1947, *Article III, paragraph* 1; *Article IV, Section I, paragraph* 1; *Article IV, Section VI, paragraph* 2.

 Zoning and kindred regulations "find their justification in some aspect of the police power, asserted for the public welfare." *Euclid v. Ambler Realty Co.,* 272 *U. S.* 365; 47 *S. Ct.* 114, 71 *L. Ed.* 303 (1926). The police authority does not lend itself to expression in terms of a definitive formula that will automatically resolve every case, for its quality and scope are commensurate with the public exigencies arising from ever-changing social and economic conditions. The Fourteenth Amendment in the domain of state action does not operate as a limitation upon the *quantum* of the power, reasonably exercised. It merely conditions the exertion of the power by the demands of due process. And the guaranty of due process requires "only that the law shall not be unreasonable, arbitrary, or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained." *Nebbia v. New York,* 291 *U. S.* 502, 54 *S. Ct.* 505, 78 *L. Ed.* 940 (1934). The public right of reasonable regulation for the common good and welfare is denominated the police power. Generally, the authority coincides with the public need. As said by Chief Justice Shaw: "It is much easier to perceive and realize the existence and sources of this power than to mark its boundaries, or prescribe limits to its exercise." *Commonwealth v. Alger,* 7 *Cush.* 53, 84, (*Sup. Jud. Mass.* 1851). The essential content and meaning of the police power and the related constitutional guaranties remain the same; but the application of the power of necessity varies with changing

needs and conditions pertaining to the public health, safety, morals, or general welfare. It sanctions measures commensurate with the common material and moral needs; and the correlative restrictions upon individual rights—either of the person or of property—are mere incidents of the social order, considered a negligible loss compared with the benefits accruing to the community as a whole. Indeed, it is to be presumed that a fully compensating individual advantage ensues from the general betterment. While some of the earlier cases seemingly confine the authority to such regulations as are needful for the public health, the public safety, and the public morals, such measures as are fairly requisite for the "public convenience" and the "general prosperity" are now considered as within the category. This reserve element of sovereignty embraces action conducive to social well-being. *Chicago, B. & Q. Railroad Co. v. Illinois*, 200 *U. S.* 561, 26 *S. Ct.* 341, 50 *L. Ed.* 596 (1906); *Bacon v. Walker*, 204 *U. S.* 311, 27 *S. Ct.* 289, 51 *L. Ed.* 499 (1907); *Eubank v. Richmond*, 226 *U. S.* 137, 33 *S. Ct.* 76, 57 *L. Ed.* 156 (1912); *Euclid v. Ambler Realty Co.*, cited *supra; Gorieb v. Fox*, 274 *U. S.* 603, 47 *S. Ct.* 675, 71 *L. Ed.* 1228 (1927); *Nashville, C. and St. L. Railroad Co. v. Walters*, 294 *U. S.* 405, 55 *S. Ct.* 486, 79 *L. Ed.* 949 (1935); *Mansfield & Swett, Inc., v. West Orange*, 120 *N. J. L.* 145 (*Sup. Ct.* 1938); *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Oliva v. City of Garfield*, 1 *N. J.* 184 (1948); *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N. J.* 509 (1949); *Lumund v. Board of Adjustment of Rutherford*, 4 *N. J.* 577 (1950); *Reingold v. Harper*, 6 *N. J.* 182 (1951); *Monmouth Lumber Co. v. Ocean Township*, 9 *N. J.* 64 (1952); *State v. Hillman*, 110 *Conn.* 108, 147 *A.* 294 (*Sup. Ct. Err.* 1929); *Town of Windsor v. Whitney*, 95 *Conn.* 368, 111 *A.* 354, 357, 12 *A. L. R.* 669 (*Sup. Ct. Err.* 1920). The police power has been termed "one of the most essential of powers, at times the most insistent, and always one of the least limitable of the powers of government." *District of Columbia v. Brooke,*

214 *U. S.* 138, 29 *S. Ct.* 560, 53 *L. Ed.* 941 (1909). To the same effect: *Noble State Bank v. Haskell,* 219 *U. S.* 104, 31 *S. Ct.* 186, 55 *L. Ed.* 112 (1911); *Hadacheck v. Sebastian,* 239 *U. S.* 394, 36 *S. Ct.* 143, 60 *L. Ed.* 348 (1915); *Miller v. Schoene,* 276 *U. S.* 272, 48 *S. Ct.* 246, 72 *L. Ed.* 568 (1928).

The exercise of the power is contained by the rule of reason. Arbitrary action is inadmissible. There must be a substantial connection between the means invoked and the public interest designed to be advanced. The inquiry is whether, considering the end in view, the measure "passes the bounds of reason and assumes the character of a merely arbitrary *fiat.*" *Purity Extract and Tonic Co. v. Lynch,* 226 *U. S.* 192, 204, 33 *S. Ct.* 44, 57 *L. Ed.* 184, 188 (1912). It is requisite that there be a rational relation between the regulation and the service of the common welfare in an area within the reach of the police power, and that the means be reasonable and appropriate to that end. Restraints upon property cannot be unreasonable or unduly discriminatory. A police regulation that goes beyond the public need is not effective to curtail the basic rights of person or of private property made the subject of constitutional guaranties. But where the subject is comprehended in the police power of the state, debatable questions as to the reasonableness of the. measure are not for judicial cognizance. *Reingold v. Harper,* cited *supra.* If, for example, the validity of a zoning classification be fairly debatable, the legislative judgment prevails. *Euclid v. Ambler Realty Co.,* cited *supra; Radice v. People of the State of New York,* 264 *U. S.* 292, 44 *S. Ct.* 325, 68 *L. Ed.* 690 (1924).

The cited constitutional amendment of 1927 followed the limitations placed upon the exercise of the zoning authority by the adjudications in *Ignaciunas v. Risley,* 98 *N. J. L.* 712 (*Sup. Ct.* 1923), affirmed *sub nom. State v. Nutley,* 99 *N. J. L.* 389 (*E. & A.* 1924) and *H. Krumgold & Sons v. Mayor, &c., Jersey City,* 102 *N. J. L.* 170 (*E. & A.* 1925), and was designed to reaffirm and define the basic

sovereign power thus challenged by the course of judicial decision and to bring its operation within certain and definite standards and principles in keeping with its essential nature; and however broad the police power inherent in sovereignty, its exercise by the use-zoning process must needs be in accord with the letter and spirit of the constitutional regulation.

The essence of zoning is territorial division according to the character of the lands and structures and their peculiar suitability for particular uses, and uniformity of use within the division. *Collins v. Board of Adjustment of Margate City*, 3 *N. J.* 200 (1949); *Potts v. Board of Adjustment of Princeton*, 133 *N. J. L.* 230 (*Sup. Ct.* 1945). Such is the genius and spirit of the constitutional provision and the enabling statute. The constitutional power is couched in these terms. The Legislature is authorized to enact "general laws" under which municipalities other than counties "may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State." *Constitution* 1947, *Article IV, Section VI, paragraph* 2. The constitutional amendment of 1927 was in the same language, except that it did not in terms embrace "the nature and extent of the uses of land." And the legislative grant of authority has the same delineation. *R. S.* 40:55–30, as amended by *L.* 1948, *c.* 305, *p.* 1221. The local governing body is specifically empowered to divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the statutory policy, and to regulate and restrict the construction and use of buildings and other structures and the use of lands within such districts, provided that "All such regulations shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district, but the regulations in one district may differ from those in other districts." *R. S.* 40:55–31, as amended by *L.* 1948, *c.* 305, *p.* 1221.

And such regulations shall be in accordance with a "comprehensive plan and designed" to serve the public welfare in one or more of the enumerated particulars involving the public health, safety, morals, or the general welfare, and "shall be made with reasonable consideration, among other things, to the character of the district and its peculiar. suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." *R. S.* 40:55–32. Arbitrary discrimination in the purported exercise of the power would violate the essence of the constitutional authority and the cited enabling statute and infringe the substance of due process and work a denial of the equal protection of the laws. It is basic in use-zoning as so provided that the use restriction be general and uniform in the particular district. *Brandon v. Montclair,* cited *supra; Murphy, Inc., v. Town of Westport,* 131 *Conn.* 292, 40 *A. 2d* 177, 156 *A. L. R.* 568 (*Sup. Ct. Err.* 1944) ; *Miller v. Board of Public Works,* 195 *Cal.* 477, 234 *Pac.* 381, 38 *A. L. R.* 1479 (*Sup. Ct.* 1925), writ of error dismissed 273 *U. S.* 781, 47 *S. Ct.* 460, 71 *L. Ed.* 889 (1926) ; *Pacific Palisades Association v. Huntington Beach,* 196 *Cal.* 211, 237 *Pac.* 538, 40 *A. L. R.* 782 (*Sup. Ct.* 1925). The equal protection clause of the Fourteenth Amendment secures equality of right by forbidding arbitrary discrimination between persons similarly circumstanced. Classification is consistent with this principle if it be reasonably based in the public policy to be served. It is not necessarily fatal that the classification be wanting in purely theoretical or scientific uniformity or mathematical nicety or that there be some inequality in practice. *Continental Baking Co. v. Woodring,* 286 *U. S.* 352, 52 *S. Ct.* 595, 76 *L. Ed.* 1155, 81 *A. L. R.* 1402 (1932) ; *Bayside Fish Flour Co. v. Gentry,* 297 *U. S.* 422, 56 *S. Ct.* 513, 80 *L. Ed.* 772 (1936) ; *New York Rapid Transit Corporation v. New York,* 303 *U. S.* 573, 58 *S. Ct.* 721, 82 *L. Ed.* 1024 (1938) ; *Asbury Hospital v. Cass County,* 326 *U. S.* 207, 66 *S. Ct.* 61, 90 *L. Ed.* 6 (1945). The principle

bars invidious discrimination. *Queenside Hills Realty Co. v. Saxe,* 328 *U. S.* 80, 66 *S. Ct.* 850, 90 *L. Ed.* 1096 (1946); *County Commissioners of Anne Arundel County v. Ward,* 186 *Md.* 330, 46 *A. 2d* 684, 165 *A. L. R.* 816 (*Ct. App.* 1946).

Under *Section* 39c of the enabling statute a variance is permissible where a particular piece of property is so uniquely circumstanced as that the strict application of the general rule of the ordinance would result in "peculiar and exceptional practical difficulties" or "exceptional and undue hardship." *R. S.* 40:55–39(c), as amended, cited *supra.* This statutory mode of relief is designed to accommodate fundamental common and individual rights in the service of the essential statutory policy, and thereby to avoid an arbitrary and capricious interference with the basic right of private property, and so it is not discriminatory in the vicious sense. *Protomastro v. Board of Adjustment of City of Hoboken,* 3 *N. J.* 494 (1950); *Brandon v. Montclair,* cited *supra.*

And the cited section 10 of the ordinance is equally unassailable. It provides for the operation of gasoline and oil filling and cleaning stations and public garages where "reasonably necessary for the convenience of the community," if in the particular case the use "will not be detrimental to the health, safety and general welfare of the community." As we have seen, the measure proceeds upon the premise that such use "may be inimical to the public safety and general welfare if located without the due consideration of conditions and surroundings." The authority of the board of adjustment is recommendatory merely, guided by these considerations. Affirmative action is made subject to the approval of the governing body. This represents an appropriate exercise of the jurisdiction conferred by subsection (b) of *R. S.* 40:55–39, as amended, cited *supra.* Thereby, the board of adjustment is now invested with the power to "hear and decide, in accordance with the provisions" of the particular zoning ordinance, "requests for special exceptions or for interpretation of the map or for decisions upon other special

questions upon which such board is authorized by any such ordinance to pass." The article plainly embraces the recommendatory authority granted by the ordinance here under review. It is not exceptionable as an undue delegation of legislative power. The board of adjustment is constituted a governmental administrative agency that in this regard exercises a function *quasi*-judicial in essence contained by a certain and definite standard and rule of action laid down in the ordinance for the execution of the use-zoning policy. The local legislative body may under that provision delegate to the administrative agency full authority to execute the legislative policy, controlled by specified rules of conduct, or it may, as was done here, clothe the administrative authority with recommendatory power merely, ruled also by specific criteria of action to serve the declared policy, reserving to itself superintendency of such affirmative discretionary action guided by the same standards. *Lynch v. Borough of Hillsdale,* 136 *N. J. L.* 129 (*Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 (*E. & A.* 1948).

Under subsection (b), unlike subsection (c), the local legislative agency may, by ordinance, define the category of special exceptions and the role of the statutory administrative body in the fulfillment of the declared policy, *i. e.,* whether the latter's jurisdiction shall be exclusive controlled by certain and definite rules of conduct, or recommendatory only. This is implicit in the very nature of the power. The board is given such authority as may be prescribed by the ordinance for the determination of the conditions and circumstances calling for an exception. On the other hand, the jurisdiction conferred by subsection (c), to allow a variance from the general rule for relief against undue hardship, is exclusive by the clear terms of the statutory grant; and the exercise of the power cannot be made subject to the superintendency of the local governing body. It would seem that the design of the cited amendment of this section of the statute was in part a more definitive specification of the powers and duties of the local administrative agency, and thus to render

more certain the execution of the policy of the local ordinance.

■■■ The advisory authority granted by the particular ordinance is also within the terms of the amended subdivision (d) of *R. S.* 40:55–39, empowering the board of adjustment to recommend to the governing body the allowance of a "variance" in "particular cases" and for "special reasons." We have no occasion here to assess the full sweep and legal quality of this article of the statute. It suffices to say that a variance or an exception is permissible in a given case for "special reasons" only if recommended by the administrative agency and sanctioned by the governing body, and that the particular clause of the subject ordinance defines the category, and the considerations governing the exercise of the recommendatory function. As under the old provision, the governing body may, "by resolution," "approve or disapprove" an affirmative recommendation. *Vide Brandon v. Montclair*, cited *supra; Lynch v. Borough of Hillsdale*, cited *supra; Verniero v. Board of Commissioners of City of Passaic*, 134 *N. J. L.* 71 (*Sup. Ct.* 1946).

■■ It would seem that the authority thus reserved to the governing body, by the statute and the ordinance itself, is essentially discretionary rather than legislative. *Vide County Commissioners of Anne Arundel County v. Ward*, cited *supra*. Yet, in either case, the governing body may not arbitrarily or unreasonably put restraints upon the exercise of the right of private property. The statute provides for general, uniform and comprehensive use zoning; and the local legislative body is restrained accordingly, apart from the operation of the constitutional guaranties against arbitrary interference with the basic right of private property. It is fundamental in the constitutional and statutory zoning process that all property similarly circumstanced be treated alike. *Brandon v. Montclair*, cited *supra; Phillips v. Township Council of Teaneck*, 120 *N. J. L.* 45 (*Sup. Ct.* 1938), affirmed 122 *N. J. L.* 485 (*E. & A.* 1939); *Appley v. Bernards Township*, 128 *N. J. L.* 195 (*Sup. Ct.* 1942), affirmed

129 N. J. L. 73 (E. & A. 1942); 128 A. L. R. 740; 149 A. L. R. 292. But certain uses may be made the subject of an exception where needed to serve the public comfort, convenience and welfare. *Higbee v. Chicago, B. & Q. R. Co.,* 235 *Wis.* 91, 292 *N. W.* 320, 128 *A. L. R.* 734 (*Sup. Ct.* 1940); *Marshall v. Salt Lake City,* 105 *Utah* 111, 141 *Pac.* 2d 704, 149 *A. L. R.* 282 (*Sup. Ct.* 1943). Where the special use is reasonably designed to advance the common good and welfare rather than purely private interests, the regulation is not classable as indiscriminate spot zoning at odds with the essence of the delegated zoning authority and therefore an excess of power.

 ██ Such is the principle of *Schnell v. Township Committee of Ocean,* cited *supra,* and *First Church of Christ, Scientist, v. Board of Adjustment of Newark,* 128 *N. J. L.* 376 (*E. & A.* 1942). Service stations of the particular class are *sui generis.* They are an indispensable adjunct of our modern economy; but they involve risks to the safety of persons and of property and the general comfort and convenience which call for their regulation in the common interest. See, also, *Reingold v. Harper,* cited *supra; Neumann v. Hoboken,* 82 *N. J. L.* 275 (*Sup. Ct.* 1912); *Ninth Street Improvement Co. v. Ocean City,* 90 *N. J. L.* 106 (*Sup. Ct.* 1917); *Schait v. Senior,* 97 *N. J. L.* 390 (*Sup. Ct.* 1922); *Weininger v. Metuchen,* 133 *N. J. L.* 544 (*Sup. Ct.* 1946). Special regulation of such uses, within reasonable bounds in keeping with social and economic needs, is conducive to the common well being involved in use zoning. *Kramer v. Mayor and City Council of Baltimore,* 166 *Md.* 324, 171 *A.* 70 (*Ct. App.* 1924). *Vide* 54 *A. L. R.* 1047; 86 *A. L. R.* 659; 117 *A. L. R.* 1117. It suffices if the classification bear a reasonable and just relation either to the general object of the legislation or to some substantial consideration of public policy or convenience or the service of the general welfare. If that be the case, the action taken is not arbitrary or discriminatory in the invidious sense. *Washington National Insurance Co. v. Board of Review,* 1 *N. J.* 545 (1949). The

particular provision of the zoning ordinance is a valid exercise of the local legislative authority. The action thus taken is not arbitrary or unreasonable.

It is urged that, if the ordinance be deemed sufficient, the Superior Court should be directed to determine the "meritorious issues." *Rule* 3:81–2 and *Rule* 3:81–13 are cited. But there were no findings by the board of adjustment in accordance with the criteria and standards of action prescribed by the ordinance and the statute; and the cause must therefore be remitted to that tribunal for action in conformance with the ruling principles.

 The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function. *Brandon v. Montclair,* cited *supra.*

The judgment is affirmed; and the cause is remanded for further proceedings in conformity with this opinion.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD and BURLING—5.

*For reversal*—None.