54 N.J. Super. 64 (1959)
148 A.2d 205
L.P. MARRON & COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
TOWNSHIP OF RIVER VALE, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1958.
Decided February 2, 1959.
*65 Before Judges SCHETTINO, HALL and GAULKIN.
Mr. Joseph Keane argued the cause for plaintiff-appellant (Messrs. Milton, McNulty & Augelli, attorneys; Mr. Joseph Keane, of counsel; Mr. William Bannon, on the brief).
Mr. Bruce H. Losche argued the cause for defendant-respondent (Messrs. Losche & Losche, attorneys).
*66 The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal is taken from a Superior Court, Law Division, judgment in favor of defendant arising out of a proceeding in lieu of prerogative writs to compel the governing body of defendant township to issue to plaintiff a building permit allowing the construction of a gasoline station on plaintiff's recently acquired property. The trial court dismissed plaintiff's complaint on the basis that a certain amending ordinance, adopted subsequent to the institution of this action and barring all gasoline stations in the particular zone within which plaintiff's property is located, was valid and dispositive of the case.
The facts are substantially undisputed and are as follows. On April 3, 1957 plaintiff contracted to purchase certain premises on River Vale Road, in the Township of River Vale, for the sum of $33,500. The contract recited that it was subject to plaintiff's procurement of permission from the municipality "and/or its duly authorized boards and officials to build, erect and maintain a gasoline filling station on the premises covered by this agreement." The agreement further recited:
"The Purchaser agrees that it will make immediate application and take all necessary steps to secure such permission from the Mayor and Council, the Planning Board, the Board of Adjustment and/or the Building Inspector of the Township of River Vale; but shall not be bound to prosecute this case before the courts.
In the event that such permission is not granted within sixty (60) days of the signing of this agreement, this contract shall become null and void; and all moneys paid the Seller hereunder shall be returned to the Purchaser."
The premises consist of a tract of land with a frontage of about 171 feet, a depth of about 566 feet on the north side line, a rear or easterly line of about 170 feet, and a depth of about 457 feet on the south side line. The tract lies partly within the "C" commercial or business district and partly within the "A" residence district. Plaintiff seeks to employ only the area within the "C" district for the service station.
*67 The surrounding area within the "C" district consists generally of business properties. Immediately to the north of plaintiff's property are located stores, including a supermarket, a gasoline station and a large parking lot adjoining plaintiff's lot. To the south there is a brick two-family dwelling, partially in the "C" district, and for an additional 100 feet southerly the property on the east side of River Vale Road is in a "B" residence district. The property on the west side of River Vale Road, opposite plaintiff's property, is zoned "C" commercial district for a depth of 200 feet and extends some 1,200 feet north. In general, plaintiff's property is in a commercial environment.
Pursuant to the zoning ordinance then in effect plaintiff duly applied to the board of adjustment of River Vale for a permit to erect a gasoline station on the entire premises. After a hearing held on April 25, 1957, the board of adjustment, on May 23, 1957, approved the application in part and recommended to the township committee that it grant plaintiff a permit subject to numerous conditions. It limited its favorable recommendation to that portion of plaintiff's entire premises which was located in "C" district. On June 6, 1957 the township committee voted to submit the question of the use of the area lying within the residential district to the planning board. On June 13, 1957 the planning board recommended that plaintiff's property within the residential district remain as such. Plaintiff accepted this condition. However, on June 20, 1957, at a special meeting of the township committee, the recommendation of the board of adjustment was rejected and plaintiff's application for a permit was denied. Plaintiff alleges that this meeting was called without notice to it or an opportunity to be heard.
On June 3, 1957 plaintiff's time to obtain the permit allowed by the contract expired, but nevertheless plaintiff completed the contract and purchased the premises.
In the trial court plaintiff argued that the township committee's duty after the approval by the board of adjustment was merely ministerial, i.e., to grant the permit. It thus brought this action in lieu of prerogative writs for an order *68 in the nature of mandamus directing the township committee to issue the permit.
Prior to April 3, 1957, the zoning ordinance in effect provided, so far as is applicable herein, as follows:
"Article IV

* * * * * * * *
Section 4
`C' Commercial District

* * * * * * * *
* * * however, no permit for the use of any premises as a filling or service station shall be issued except upon application first made to the Board of Adjustment, which, after hearing in the same manner and under the same procedure as in the case of an application for an exception to the terms of the Zoning Ordinance, shall approve the same and recommend in writing to the Township Committee that such permit for such use be granted."
During the pendency of this action the township committee, on August 1, 1957, passed an amendment to the zoning ordinance, affecting the "C" district and in effect barring the erection of any additional gasoline station therein. This amendment provided in part that "No garage, gasoline or filling station shall be permitted in said district."
In its complaint plaintiff charged that the refusal of the township committee to approve the recommendations of the board of adjustment was "unreasonable, arbitrary and capricious; and further was improper, illegal, and not in conformity with the provisions of the statute * * *." The answer set forth the amendment as a bar to the suit, alleging it to be a valid exercise of the police power. No reply was filed. In the pretrial order plaintiff attacked the amendment broadly and without specification, "as being an abuse of the zoning power, illegal, unreasonable and confiscatory." This was the only issue tried in the trial court.
On this appeal plaintiff argues that it obtained a vested right to a permit on June 13, 1957, which right was unaffected by the subsequent amendment to the zoning ordinance, and that the passage of the amendment during the pendency of the suit and its application to plaintiff's permit were arbitrary and capricious.
*69 Defendant asserts that plaintiff may not make the vested rights argument on this appeal, as it was neither pleaded nor tried. R.R. 1:7-1(c) provides that the appellant's brief shall contain:
"A statement of the questions involved, setting forth each question separately, in the briefest and most general terms, without names, dates, amounts or particulars of any kind. The entire statement should not ordinarily exceed 20 lines, must never exceed one page, and must be printed on a page by itself without any other matter appearing thereon. If the questions involved include any not presented to the court below, this fact shall be noted. The foregoing requirements are to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in or necessarily suggested by the statement of questions involved." (Emphasis added.)
In Roberts Electric, Inc. v. Foundations & Excavations, Inc., 5 N.J. 426, 430 (1950), Chief Justice Vanderbilt, referring to the above quoted rule, stated:
"* * * This is the only rule of court containing such strong language, but the necessity therefor is obvious. It is essential that the appellate courts in studying the briefs know at the outset the questions involved in order to determine what facts in the case are pertinent to the issues raised by counsel. It is especially important to know if any new issues are being raised for the first time in the reviewing court, for ordinarily only matters of jurisdiction or of public policy will be considered for the first time on appeal."
See also Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 468 (App. Div. 1958).
On this appeal plaintiff sets forth the questions involved as follows:
"1. Where under a zoning ordinance in effect, plaintiff obtained a vested right to a permit on June 13, 1957, is the right affected by the subsequent amendment to the zoning ordinance?
2. Was the passage of the ordinance during the pendency of the suit and the application of said ordinance to the plaintiff's permit, arbitrary and capricious?"
It is clear that the first question was not raised nor considered below nor is it denominated a "new question" *70 on this appeal. Therefore, it is within the interdiction of R.R. 1:7-1(c). However, in view of the importance of the subject matter of this litigation and in light of the determinations we reach on the merits, we have elected not to decide the question whether appellant's formal errors are so serious as to preclude consideration on the merits. Nevertheless, we do not condone any violation of this rule.
We turn to the question whether plaintiff obtained a vested right to a permit on June 13, 1957, which right, plaintiff contends, if it exists, would be unaffected by the subsequent amending ordinance. It should be noted at the outset that plaintiff is not here making the same type of "vested rights" argument as was made in such cases as Roselle v. Mayor and Council of Borough of Moonachie, 49 N.J. Super. 35 (App. Div. 1958), and Crecca v. Nucera, 52 N.J. Super. 279 (App. Div. 1958). Those cases dealt with the question of whether the property owners had a vested right to a certain use of their land as of the time of their applications for permits. They based their vested rights argument on the expenditures they incurred relying on the zoning ordinances as they existed prior to and at the time of their applications. In Roselle, supra (49 N.J. Super., at page 40) the court said:
"* * * The more general view, however, is that the mere right under existing laws and ordinances to make a particular use of property at the time of an application for a permit does not immunize the owner from a valid subsequently adopted legislation, state or municipal. 8 McQuillin. Municipal Corporations (3rd ed. 1957), § 25.155, p. 356; Annotation 169 A.L.R. 584 (1947). This is also the well settled view in New Jersey, exemplified by the cases cited in our earlier opinion in this matter ([Roselle v. Mayor and Council of Borough of Moonachie] 48 N.J. Super. [17], at page 21). Nor does the fact that the particular application for the use reveals the need for the new zoning regulation and provides the incentive for its passage derogate against the effectiveness of the regulation as against the proposed use. Guaclides v. Borough of Englewood Cliffs, supra, 11 N.J. Super. [405], at page 415. The predominant viewpoint goes to the extent of sanctioning the revocation of a permit for a use valid when issued, where a subsequent prohibitory regulation is adopted prior to reliance by the owner upon the permit by substantial investment or expenditure." *71 Judge Conford therein further stated (49 N.J. Super. at page 43): "Until the right reached fruition in an actual non-conforming use, it was not vested in the sense of being protected against the effect of new zoning legislation." And (49 N.J. Super. at page 44) it is made clear that the substantial reliance that will immunize the landowner from subsequent legislation must be a "justifiable expenditure in good faith."
In the Crecca case, supra (52 N.J. Super., at page 282), the court stated:
"The question for determination is at what point in time, whether before or after the issuance of a building permit, and under what circumstances does a property owner secure an indefeasibly vested right protecting him from a subsequent, assumedly valid ordinance change which will inhibit or prohibit a use of his property?"
The court reiterated, discussed and approved the decision in Roselle case, supra, and stated (52 N.J. Super. at page 284): "It is of no moment that the evil sought to be met by the zoning ordinance has come to the attention of the governing body solely by reason of the instant application for a permit." The court squarely faced the issue of "Whether `reliance' includes the actual purchase of property and monies expended in the acquisition thereof or whether it is limited to the actual commencement of excavation or construction." It held (52 N.J. Super. at pages 286-287):
"The substantial reliance contemplated by our decisions in Sun Oil Co. v. City of Clifton, 16 N.J. Super. 265 (App. Div. 1951), and Roselle v. Mayor and Council of Borough of Moonachie, supra, 49 N.J. Super., at page 40, pertaining to investments or expenditures in connection with the actual commencement of excavation or construction. And in 138 A.L.R. 500, 501 (1942), it is said:
`The mere facts that property has been purchased or leased with the intention to use it for a purpose allowable under the existing zoning regulations or that plans have been made and expenses incurred in preliminary preparations for such use have been held not to prevent the application to it of a subsequent amendment prohibiting its use for such purpose.'
* * * We hold that reliance is not constituted by the change of position brought about by merely entering into a contract to purchase with the intention to make the use later prohibited. Nor do *72 we regard the incurrence of the miscellaneous expenses for title policy, surveyors' and architects' plans as constituting substantial reliance, under all the circumstances of the case."
In the instant case plaintiff's argument is slightly different. It argues that it obtained a vested right to a permit on June 13, 1957, the date the planning board acted pursuant to the reference of plaintiff's application to it by the township committee. It further contends that its right is not affected by the subsequent amendment to the zoning ordinance. It contends that the board of adjustment had exclusive jurisdiction to grant or deny the permit and that the township committee's duty was purely ministerial. It bottoms this conclusion on the ordinance involved at the time the board of adjustment acted, on N.J.S.A. 40:55-39(c), and on the case of Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952).
Plaintiff argues that under the doctrine of the Schmidt case the municipality, in making a delegation to the board of adjustment to hear and decide special questions, may make the delegation to the board either recommendatory or exclusive and that, as there is no language in the ordinance reserving to the township committee any power or right to reject or refuse the recommendation of the board, the grant of jurisdiction was exclusive. Plaintiff further argues that as N.J.S.A. 40:55-39(c) gives to the board exclusive jurisdiction, and as this ordinance sets out the standards of subsection (c), this board has exclusive jurisdiction. However, we find plaintiff's contentions wholly without merit.
N.J.S.A. 40:55-39 provides in part:

"Powers of board of adjustment; no relief impairing zone plan
The board of adjustment shall have the power to:

* * * * * * * *
b. Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass.
c. Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional *73 topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property, the strict application of any regulation enacted under the act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship; provided, however, that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use. * * *"
Subsection (a) of the statute deals with appeals and subsection (d) deals with variances, neither of which is involved here.
Schmidt v. Board of Adjustment, Newark, supra, involved an ordinance which was similar to Art. IV, § 4 "C" of the original ordinance involved herein. The authority of the board was there held to be recommendatory only. Mr. Justice Heher said (9 N.J. at pages 419-420):
"* * * Affirmative action is made subject to the approval of the governing body. This represents an appropriate exercise of the jurisdiction conferred by subsection (b) of R.S. 40:55-39, as amended, N.J.S.A. cited supra. Thereby, the board of adjustment is now invested with the power to `Hear and decide, in accordance with the provisions' of the particular zoning ordinance, `requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass.' The article plainly embraces the recommendatory authority granted by the ordinance here under review."
The opinion further stated (9 N.J. at pages 420-421):
"Under subsection (b), unlike subsection (c), the local legislative agency may, by ordinance, define the category of special exceptions and the role of the statutory administrative body in the fulfillment of the declared policy, i.e., whether the latter's jurisdiction shall be exclusive, controlled by certain and definite rules of conduct, or recommendatory only. This is implicit in the very nature of the power. The board is given such authority as may be prescribed by the ordinance for the determination of the conditions and circumstances calling for an exception. On the other hand, the jurisdiction conferred by subsection (c), to allow a variance from the general rule for relief against undue hardship, is exclusive by the clear terms of the statutory grant; and the exercise of the power cannot be made subject to the superintendency of the local governing body. It *74 would seem that the design of the cited amendment of this section of the statute was in part a more definitive specification of the powers and duties of the local administrative agency, and thus to render more certain the execution of the policy of the local ordinance."
It is clear that the original section "C" of the ordinance does not fall within subsection (c). That section deals with situations where the property is zoned against the use desired, a situation not found herein until the amending ordinance was passed. It allows a variance from the zoning restrictions in certain limited situations. But, we emphasize, it presupposes an existing ordinance restricting the applicant's use of his property.
However, at the time of the board's determination there was no ordinance prohibiting gasoline stations in the "C" zone. Plaintiff was merely seeking an exception.
Therefore, plaintiff's only remaining basis for imputing an exclusive character to the board's authority under this ordinance is that it is in the nature of a subsection (b) situation and that the municipality chose to render the board's jurisdiction exclusive. However, the ordinance itself militates against such a view. It provides that the board shall "approve the same and recommend in writing to the Township Committee that such permit for such use be granted." The Schmidt case allows such a procedure. It would have required little effort to render the board's determination exclusive had the municipality so intended the ordinance to provide. It is true, as plaintiff contends, that there is no language in the ordinance reserving to the township committee any power to reject or refuse the "recommendation" of the board of adjustment. But this is implied in the use of the word "recommend." Moreover, the absence of any clear direction on this point does not indicate exclusiveness any more than it indicates non-exclusiveness. We conclude that plaintiff acquired no absolute right to a permit upon the determination in its favor by the board of adjustment.
Plaintiff contends that the passage of the ordinance during the pendency of the suit and the application of *75 said ordinance to plaintiff's permit was arbitrary and capricious. It states that the ordinance was specifically directed at plaintiff's application. The argument is ineffectual. We apply the general rule that:
"* * * `the status of the law in respect to the validity of the use of property for a particular purpose is to be determined as of the time the court is called upon to act, rather than when the property owner applied for official permission to make the use.' Mayor and Council of Borough of Roselle v. Moonachie, supra, 48 N.J. Super. [17], at page 21 [other citations] Ordinarily, it is our reviewing function to inquire whether the judgment when rendered was erroneous or not. But, if before the decision of the appellate court, an amendment to an ordinance intervenes and positively changes it, it must be obeyed. We must decide according to the existing law." Crecca case, supra. (52 N.J. Super., at page 284).
"It is of no moment that the evil sought to be met by the zoning ordinance has come to the attention of the governing body solely by reason of the instant application for a permit." Crecca case, supra (52 N.J. Super. at page 284).
Plaintiff argued in the trial court and somewhat casually mentioned in its brief here that the amending ordinance is invalid because it, in effect, virtually prohibits the building of any additional gasoline station in the township. This argument is not encompassed by the statement of questions on appeal. We are therefore not called upon to decide the legal question. Moreover, our examination of the record does not convince us that the claimed factual effect is clearly established.
In view of the amendment, we are not concerned with the validity of the original ordinance insofar as it may not have established sufficient standards for the granting or denying of exceptions for gasoline stations. See Schmidt case, supra (9 N.J. 405).
Affirmed.