## CIRCUIT COURT OF ROCKINGHAM COUNTY

David M. Williams, Jr.,
and Ladonna Williams

v.

Virginia Manufactured Housing Board
and Golden Rule Homes, Inc.

December 2, 1998

Case No. (Chancery) 16324

BY JUDGE JOHN J. MCGRATH, JR.

Petitioners have appealed pursuant to Rule 2A:4 of the Rules of the Supreme Court of Virginia an administrative case decision of the Virginia Manufactured Housing Board rendered on April 4, 1997. Petitioners claim that the decision of the Virginia Manufactured Housing Board (hereinafter "Board") should be reversed because it is contrary to the applicable statutory provisions under which the Board operates and it is arbitrary and capricious because it is not based upon substantial evidence of the record.

The facts are rather straightforward and are not in serious dispute between the parties. On or about October 23, 1995, the petitioners, after having examined a number of manufactured homes located at the sales lot of Golden Rule Homes, Inc., located in Mount Crawford, Virginia, put a $100.00 deposit down upon a home, which was part of the Dealer's inventory. The petitioners obtained their own financing from F. & M. Bank. On or about December 4, 1995, F. & M. Bank forwarded the purchase price of the mobile home of $23,185.00 to Golden Rule Homes, Inc. This was done even though the petitioners had not at that time executed a contract to purchase the mobile home. On December 9, 1995, the petitioners went to the sales offices of Golden Rule Homes, Inc., and executed a contract for the home which was

located on the lot which had as a purchase price the previously specified amount of $23,185.00.

Shortly after signing the contract of sale on December 9, 1995, petitioners discovered that the lot they had bought in the Town of Broadway on which they planned to place the mobile home was not zoned for mobile homes. The petitioners then allegedly engaged in a series of conversations with the Golden Rule personnel asking if they could cancel the contract. According to the testimony of the petitioners at the administrative hearing, they were informed that that could not be done because the contract had been finalized in that the payment in full had been made and that "title had already been transferred."

The documentary evidence introduced at the hearing indicates that title to the vehicle was not transferred from Golden Rule Mobile Homes, Inc., to the petitioners in December of 1995. The application for a Certificate of Title and Registration was submitted to the Department of Motor Vehicles with the date of purchase listed as April 1, 1996. (See Administrative Record at page 53.) The Certificate of Title, which was finally issued to the petitioners by the Department of Motor Vehicles was dated April 24, 1996, and the DMV motor vehicle registration which was issued to the petitioners indicated that the purchase date of the vehicle was April 1, 1996.

Before the Administrative Agency, the petitioners argued that under the terms of § 36-85.28 of the Code of Virginia, the dealer was entitled by law to retain as damages no more than $500.00 and, moreover, the dealer had failed pursuant to the provisions of § 36-85.28(B) of the Code of Virginia to give a written disclosure to the buyer at the time of the sale alerting the buyer to the maximum amount of damages that could be assessed to the buyer for failure to take delivery of the manufactured home from the dealer.

After an informal fact finding procedure, the Virginia Manufactured Housing Board issued a final order which is interestingly captioned "Consent Order No. 97-1" in which the Board found that Golden Rule Homes, Inc., had violated § 6.2(B) of the Board's rules in that they had failed to provide a written statement of the limitation of damages that can be claimed by a dealer when a customer does not take delivery of a mobile home. This portion of the decision of the Board has not been appealed from and, in fact, Golden Rule Homes, Inc., acting through its president agreed to the imposition of a $250.00 fine for its violation of this provision of the Board's rules.

However, in the same decision, the Board concluded that the substantive limitation of damages provision contained in § 36-85.28(A) of the Code did not apply in this case for the reason that the limitation on damages was applicable only in a situation where "a buyer fails to accept delivery of a manufactured home." The Board's view was that the petitioners had signed a

contract for the purchase of the manufactured home and had paid in full for the home. Their position was that the dealer was ready, willing, and able to make delivery of the home but refrained from doing so because the purchasers did not have a suitable location to accept delivery of the home. The Board, therefore, concluded that the petitioner had taken delivery or constructive delivery by paying the purchase price in full after having had an opportunity to inspect the home on the lot of Golden Rule Homes, Inc.

Petitioners contend that the Board's interpretation of the statute language is incorrect as a matter of law. The petitioners argue that the payment of the purchase price does not equate to the acceptance of delivery of a manufactured home. Petitioners' argument is that they never took physical delivery of the home and because part of the contract of sale was a requirement that the dealer deliver the home to a construction site, there could not be delivery without a physical placement of the manufactured home on the petitioners' property or property designated by the Petitioners.

The contract of sale, which was executed by the petitioners and Golden Rule Homes, Inc., on December 9, 1995, contains two pertinent provisions. The first provision provides that "title to the unit purchased will remain in [the dealer] until the agreed upon purchase price is paid in full in cash .... at which time title passes to [the purchasers] even though the actual delivery of the unit purchased may be made at a later date." There is another provision in the contract entitled "Paragraph 17" which provides various rights and obligations of the parties if the dealer has included delivery of the unit in the purchase price or if a quote or charge for delivery to the purchasers' destination is included in the contract. Although there is nothing on the face of the contract indicating that delivery and set up was included in the purchase price, that fact was conceded by all the parties throughout the administrative hearing. Therefore, the Court will accept that as an uncontested fact in this case.

The Attorney General argues on behalf of the Board that the standards of review of an administrative decision are narrow in scope and the petitioners have a high burden of showing reversible error in the Board's decision

The Court is mindful of the narrow basis on which it may review an administrative agency's decision under the applicable provisions of the Virginia Administrative Process Act (Article 4, §§ 9-6.14:15 to 9-6.14:19, Code of Virginia, as amended, 1950). The relatively recent pronouncement of the Court of Appeals in *Environmental Defense Fund, Inc. v. Virginia State Water Control Bd.*, 15 Va. App. 271 (1992), sets out quite succinctly the governing principles of law:

II. *Standard of Review*

The parameters of judicial review of "agency action" are defined in Code § 9-6.14:17 of the Act. This Court has previously instructed that the "issues of law" specified in the statute "fall into two categories: first, whether the agency acted within the scope of [its] authority, and second, whether the decision itself was supported by the evidence." *Johnston-Willis Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). Although many circumstances involved "mixed questions" of both "law and fact," issues are sometimes "oversimplified" as "legal" or "factual," a distinction which is significant to judicial review of an administrative decision. See *id.* at 243, 369 S.E.2d at 7.

It is well established that agency action is presumed valid on review, and the burden rests "upon the party complaining" to overcome this presumption. Code § 9-6.14:17; *Commonwealth ex rel. State Water Control Bd. v. Appalachian Power Co.*, 9 Va. App. 254, 259, 386 S.E.2d 633, 635 (1989), *aff'd en banc*, 12 Va. App. 73, 402 S.E.2d 703 (1991). However, agency resolution of "factual issues" is generally "accorded greater deference" than decisions related to "legal issues." *Johnston-Willis*, 6 Va. App. at 242-43, 369 S.E.2d at 7.

In "the context of factual issues," Code § 9-6.14:17 mandates that "the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." *Id.* at 242, 369 S.E.2d at 7. This heightened deference acknowledges an agency's "expert discretion [in] matters coming within its cognizance and [allows] judicial interference ... . only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion." *Virginia Alcoholic Beverage Control Comm'n v. York Street Inn, Inc.*, 220 Va. 310, 315, 257 S.E.2d 851 (1979) (quoting *Schmidt v. Board of Adjustment of Newark*, 9 N.J. 405, 423, 88 A.2d 607, 615-16 (1952)). A "reviewing court may reject [an] agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Johnston-Willis*, 6 Va. App. at 242, 369 S.E.2d at 7; see Code § 9-6.14:17.

In contrast, judicial review of a "legal issue" requires "little deference," unless it also "falls within an agency's area of particular expertise." *Johnston-Willis*, 6 Va. App. at 243-46, 369 S.E.2d at 8. This principle recognizes the "special competence" of the judiciary to

decide issues of "common law," "constitutional law" or "statutory interpretation," distinct from "findings of fact." *Id.* Courts must "construe and determine compliance with the statutes governing adoption of administrative regulation irrespective of the agency's construction," *Apco*, 9 Va. App. at 259-60, 386 S.E.2d 633 at 636, and not "merely rubber-stamp an agency determination." *Johnston-Willis*, 6 Va. App. at 243, 369 S.E.2d at 8. Agency action, even when "supported by substantial evidence," must be set aside if judicial review reveals a failure "to observe the required procedures or to comply with statutory authority." *Id.* at 243, 369 S.E.2d at 7; see *State Bd. of Health v. Godfrey*, 223 Va. 423, 434, 290 S.E.2d 875, 880-81 (1982); *Muse v. Virginia Alcoholic Beverage Control Bd.*, 9 Va. App. 74, 78, 384 S.E.2d 110, 112 (1989); Code § 9-6.14:17.*Id.* at pp. 277-278.

In this case, there is no real dispute of the facts. The Board has found and the parties do not dispute that the petitioners made a $100.00 deposit on October 23, 1995; that the petitioners' lending institution made payment in full to Golden Rule Homes, Inc., on December 4, 1995; that the petitioners and Golden Rule Homes, Inc., signed a contract of sale on December 9, 1995; and that Golden Rule offered to deliver the manufactured home to a suitable location designated by the petitioners sometime after the contract was signed on December 9, 1995. Golden Rule did not make delivery at the request of petitioners because petitioners did not have a properly zoned lot on which the manufactured home could be delivered.

Although not addressed directly in the Consent Order of April 7, 1997, there is no dispute in the administrative record that Golden Rule had agreed as part of the contract to deliver and set-up the home on petitioners' lot. (Admin. Record, pp. 33, 199, 214-15.) Similarly, there is no factual dispute that shortly after December 9, 1995, petitioners had asked Golden Rule to "cancel" or "rescind" the transaction and were told by a Golden Rule representative that that would not be done and that the home had already been transferred into their name. (Admin. Record pp. 140-42.) The record is also clear that title was not transferred by DMV from Golden Rule until approximately April 24, 1996 (Admin. Record pp. 044), and that the Registration issued by DMV listed the purchase date as April 19, 1996. (Admin. Record p. 044.)

These facts are not in dispute. What is in dispute is the legal issue of when and how does a "buyer fail to accept delivery of a manufactured home ... ." within the meaning of § 36-85.28 of the Code of Virginia. This is a legal question calling for the proper legal interpretation of a statute and the

reconciliation of that interpretation with the common law and statutory law governing the sale of chattels. Thus, the legal conclusion of the Board on the meaning of the term "delivery" is not afforded the level of deference that would be appropriate if the Board had made a factual finding. See, e.g., *Environmental Defense Fund, Inc. v. Virginia State Water Control Bd.*, 15 Va. App. 271 (1992); *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231 (1988).

Counsel for the Defendants argue that under the common law and the Uniform Commercial Code, the Board's decision that payment in full for the home constituted "acceptance of delivery" and even if it is assumed *arguendo* that payment in full is not legally equivalent to acceptance of delivery, Golden Rule had made a tender of delivery of conforming goods pursuant to § 8.2-503 of the Commercial Code and, therefore, petitioners were required to make payment in full pursuant to § 8.2-507 of the Commercial Code.

Counsel for the Petitioners, on the other hand, argue that since the contract contained an obligation for the seller to "deliver" the goods to petitioners' job site and since the sellers did not transfer title to the petitioners until April of 1996 (some four months after the petitioners had requested rescission or cancellation of the contract), the Board made a patently erroneous ruling that petitioners had accepted delivery by paying the purchase price in full.

There is surprisingly little precedent cited for the proposition of when "delivery" takes place when dealing with a manufactured home. Looking at the contract the parties had signed indicates that "delivery" (Paragraph 17) contemplates an actual physical transportation of the home to a potential home site. Similarly, Paragraph 17 provides that the contract could have been written to provide that the home was sold F.O.B. dealer's lot. If that had been the case, it seems clear that the dealer would have made delivery within the meaning of § 36-85.28 by tendering the delivery of conforming goods at its lot.

In this case, however, the dealer did not make a delivery of the home (albeit because of petitioners' failure to provide a suitable lot). However, under § 8.1-210(14) of the Commercial Code the dealer had another means of "delivering" the home which was by delivering or transferring a document of title to the property to the petitioners. Instead, the dealer delayed from December 9, 1995, until sometime in April 1996 the transfer of title to the petitioners. Thus, during the period of time that the petitioners were seeking to cancel or rescind the sale, neither actual delivery of the mobile home nor delivery of a document of title to the mobile home had taken place.

Although a tender had been made, it had not been accompanied by actual physical delivery, nor had it been consummated by transferring title to the petitioners and thus making an effective delivery of the chattel to the buyer. It is the Court's conclusion that the Board erred as a matter of law in concluding

that the limitations of damages provision contained in § 36-85.28 did not apply in this case. Therefore, the Order of the Board is vacated as it relates to this issue, and the matter is remanded to the Board with instructions that the Board determine what recovery, if any, the petitioners are entitled to.

The petitioners have requested an award of attorney's fees under the provisions of § 36-85.35 of the Code of Virginia. The award of attorney's fees is discretionary with the Court ("the court may award reasonable attorney's fees"), and in light of the fact that petitioners' failure to designate an acceptable location for delivery of the manufactured home was the single largest factor contributing to this litigation, the Court is of the view that all parties shall bear their own costs and attorney's fees.