## CIRCUIT COURT OF ROCKINGHAM COUNTY

David Williams, Jr.,
and Ladonna Williams

v.

Virginia Manufactured Housing Board
and Golden Rule Homes, Inc.

October 1, 2001

Case No. (Chancery) 16324

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court (for a second time) on a Petition for Appeal of Administrative Case Decision Order Number 97-1 (Revised) (February 6, 2001) issued by the Virginia Manufactured Housing Board (hereinafter VMHB). The facts of this case are set forth quite thoroughly in this Court's earlier decision (*Williams v. Virginia Manufactured Housing Bd.*, 47 Va. Cir. 426 (1998)) and, therefore, will only be summarized in this Order.

Mr. and Mrs. Williams bought a mobile home from Golden Rule Homes on or about October 23, 1995, and arranged for the full purchase price of $23,185.00 to be paid to Golden Rule on or about December 4, 1995. For some unexplained reason, the contract for purchase was not signed until December 9, 1995. Shortly after December 9, 1995, and before taking delivery of the home, the Williamses sought to cancel or rescind the purchase, but Golden Rule refused to comply with this request. In fact, Golden Rule erroneously told the Williamses in December of 1995 that "title" had already been transferred into their names at DMV. (Record at 140-42.) Actually, title was not transferred to the Williamses until April 24, 1996. (Record at 044.)

In its earlier opinion, this Court reversed the decision of the VMHB and held that the Williamses were entitled to rescind the contract and that Golden Rule was not entitled to keep any monies in excess of the $100.00 down

payment the Williamses had made. The previous Order of this Court concluded:

> It is the Court's conclusion that the Board erred as a matter of law in concluding that the limitations of damages provision contained in § 36-85.28 did not apply in this case. Therefore, the Order of the Board is vacated as it relates to this issue, and the matter is remanded to the Board with instructions that the Board determine what recovery, if any, the petitioners are entitled to.

47 Va. Cir. at 431-32.

Upon remand, the VMHB conducted an informal fact-finding session to determine the damages to be awarded the Williamses. The Williamses made a claim for damages before the VMHB which totaled $31,227.03. The constituent elements of their claimed damages were as follows (Record at 610):

| | |
|---|---:|
| Loss of Deposit | $ 100.00 |
| Payments made on the loan (10 payments of $510.64 per month minus the original land loan payment of $177.18/month) | 3,334.60 |
| Deficiency owed F & M Bank after repossession through 12/22/98 | 14,405.05 |
| Loss of equity in lot (Foreclosure sale price of $16,000 minus pay-off of lot loan reflected on the 1995 closing statement) | 3,387.38 |
| Loss of credit convenience, creditworthiness, etc. | 5,000.00 |
| Distress, mental suffering, emotional anguish | 5,000.00 |
| TOTAL | $31,227.03 |

Golden Rule, on the other hand, argued that the only possible damage is the $100.00 deposit paid by the Williamses which has not been refunded and that all other damages are attributable to the Williamses, the Williamses' failure to mitigate, the actions of third parties (*i.e.* F & M Bank which foreclosed on the loan collateral), or unrecoverable economic losses.

The VMHB held an informal fact-finding hearing on August 19, 1999. It undertook to determine what compensable damages had been suffered by the Williamses. This issue was complicated by a number of factors:

(1) The Williamses' financing of the mobile home was combined with financing on their lot;

(2) After Golden Rule refused to rescind the contract and refund their money, the Williamses continued to make ten monthly payments on their loan;

(3) The mobile home was eventually repossessed by the bank and sold leaving a deficiency chargeable to the Williamses; and

(4) Questions were raised relating to the commercial reasonableness of the bank's resale of the collateral and, hence, the appropriate size of the deficiency.

After considering all of the facts, the VMHB reached the conclusion that the total "damages" of the Williamses was $16,823.85:

That makes $13,389.25 as the total write-off by the bank. The deposit of $100 was verified by a cancelled check. Mr. and Mrs. Williams made payments on the loan during 1995. The Board found it appropriate to adjust the loan amount by deleting the portion of the loan attributed to the land purchase. Accepting these figures and adding them together totals $16,823.85 in damages. The Board also considered how much of this amount is due to the actions of Golden Rule Homes and how much is attributed to the lack of actions by the Williamses to help minimize their own losses.

Record at 613.

The VMHB then concluded that all of the damages, except $1,600.00 were attributable to the Williamses' failure to take remedial action and mitigate their damages. (Record at 614.) The VMHB considered as a "failure to mitigate," the fact that the Williamses had not determined *before* purchasing the mobile home that the lot they had selected was not zoned for mobile homes. (Record at 613.) In addition, the VMHB held that the Williamses could have mitigated damages by taking possession of the mobile home and putting it on rental property until the litigation was resolved or the home was sold. (Record at 614.) After enumerating the alleged shortcomings

of the Williamses, the VMHB concluded that the Williamses should recover a total of $1,600.00 consisting of their $100.00 deposit and $1,500.00 which "The Board determined . . . would be the normal and usual cost for the set-up of a single section manufactured home in this area." (Record at 615.)

The difficulty with the reasoning of the VMHB is that it ignores the plain meaning and effect of § 36-85.28 of the Code of Virginia. Mobile home dealers come under a statutory scheme substantially different than the common law rule of damages. Dealers in mobile homes are prohibited from retaining any damages over $500.00 when a buyer "fails to accept delivery of a manufactured home." In this case, the Williamses failed to take delivery of the mobile home, and Golden Rule could not retain anything more than $500.00 of their payment as damages. If Golden Rule had complied with the law when the Williamses breached their contract (by refusing to take delivery), the Williamses would have been entitled to a return of their $23,750.00 payment, less any damages proved by Golden Rule not to exceed $500.00. Golden Rule, on the other hand, would have been entitled to retain the ownership and title to the mobile home.

The fact is that by not complying with the law restricting the amount of damages that could be retained, Golden Rule has caused the Williamses the direct and proximate "damage" of the deficiency of $13,389.25 remaining after the sale of the home by the bank, the $100.00 deposit which was never returned, and the $3,334.60 in monthly bank payments made by the Williamses prior to default. These are, in fact, the damages that were found by the VMHB before "making adjustments." (Record at 613.) These damages were directly related to the breach of § 36-85.28 of the Code of Virginia by Golden Rule.

The damages claimed by the Williamses for the economic loss on the sale of their lot, the loss of "credit-worthiness," and "mental suffering" and "emotional anguish" are too remote and speculative to be recoverable in this type of action.

There is no question that the Williamses made a grave mistake in buying a mobile home which could not be put on the lot they owned. However, when this error was discovered, the mobile home was sitting on Golden Rule's lot; the home had not been moved to the building site, the title had not been transferred to the Williamses by DMV, and Golden Rule had incurred little or no expense related to the transaction other than the possibility of minor paperwork costs. At that point, the Williamses breached their contract by refusing to take delivery, and Golden Rule was "damaged" by either the loss of their profit on the contemplated sale or the difference between their contractual price and what price they could obtain on the sale of the home to

another buyer. However, § 36-85.28 of the Code of Virginia does not permit Golden Rule to recover or retain these damages; Golden Rule "may retain actual damages" up to $500.00. Va. Code § 36-85.28(1).

In this case, however, Golden Rule put on virtually no evidence of what actual damages they suffered as a result of the Williamses breach of contract. There was testimony that Golden Rule incurred some expense related to "exploring the possibility of putting a modular home on the property" as a substitute for the manufactured home for which the Williamses had contracted. (Record at 31.) These expenses were "considerable" and included "getting the plans together and the prices and visiting the site for the grading and so on and so forth, things of this nature, and also the blueprints for the home." (Record at 36.) These expenses were never specifically quantified, but a Golden Rule executive did testify that "certainly $100.00 wouldn't have compensated for what [Golden Rule] had done." (Record at 38.) Because this is the only quantification of damages, the Court finds that Golden Rule suffered only $100.00 of damages as a result of the Williamses breach of contract.

Although the Williamses may have been able to do a number of things to "mitigate" their own damages, they were not required to take delivery of a mobile home whose contract of purchase they had repudiated. The law does not require such extreme steps in mitigation of damages. *See, e.g., Stohlman v. S & B, Ltd.*, 249 Va. 251 (1995); *Rosenberg v. Stone*, 160 Va. 381 (1933).

Golden Rule has also suggested that the sale of the mobile home by F & M Massanutten was not "commercially reasonable" and, therefore, the deficiency amount was improper. However, Golden Rule offered no evidence and did not carry their burden of showing that sale of the collateral was not done in a commercially reasonable manner or in anything other than an arms length transaction. *See, e.g., Stohlman v. S & B, Ltd.*, 249 Va. 251, 256 (1995).

The Court is mindful of the deference which must be shown the administrative agency, the presumption of regularity that attaches to its proceedings, and the presumed expertise of the agency in its field of regulation. Section 9-16.14:17 of the Code of Virginia; see cases cited in *Williams v. Virginia Manufactured Housing Bd.*, 47 Va. Cir. 426 (1998). However, the issue before the VMHB in this proceeding was principally one of law: What were the claimants' compensable damages caused by Golden Rule's failure to return their payment?

The VMHB properly found the Williamses' damages to be $16,823.85 (Record at 613), but then engaged in a statutorily prohibited recasting of the statute by "reducing" the claimants' damages by amounts that the Board

found, with no evidentiary or legal support, should be borne by the Williamses. This purported reduction in the found damages was wholly without a factual or evidentiary basis and contrary to law.

This Court finds the Williamses' damages to be $16,823.85, less $100.00 in damages to Golden Rule.

Wherefore, Order Number 97-1 (Revised) dated February 6, 2001, of the Virginia Manufactured Housing Board is reversed as being arbitrary, capricious, and beyond the authority of the law, and the case is remanded with directions for the Board to enter an order awarding the Petitioners' damages of $16,723.85.

The Clerk of the Court is directed to send certified copies of this Opinion and Order to C. Lamar Garren, Esq., Counsel for Petitioners; Steven M. Blatt, Esq., Counsel for Respondent Golden Rule; and John B. Purcell, Jr., Esq., Counsel for Respondent VMHB.