**Salem**

COMMONWEALTH OF VIRGINIA, *ex rel.*

STATE WATER CONTROL BOARD

v.

APPALACHIAN POWER COMPANY

No. 1274-88-3

Decided on December 5, 1989

COUNSEL

John R. Butcher, Assistant Attorney General (Mary Sue Terry, Attorney General, on briefs), for appellant.

Joseph M. Spivey, III (William L. Rosbe; Hunton & Williams, on brief), for appellee.

OPINION

**COLEMAN, J.**—The issue on this appeal is whether an administrative agency, the State Water Control Board (the SWCB), followed the statutory requirements when it enacted two of its water control standards. On October 7, 1987, the SWCB attempted to amend its standards to prohibit the use of "chlorine or other halogen compounds" by any facility that discharges at least 20,000 gallons of effluent per day into state waters inhabited by endangered or threatened species of aquatic life, and to designate a 121 mile section of the Clinch River as an essential or critical habitat for six species of endangered or threatened freshwater mussels indigenous to the Clinch, namely: the Appalachian monkeyface pearly, the birdwing pearly, the fine-rayed pigtoe pearly, the green blossom pearly, the pink mucket pearly, and the shiny pigtoe pearly.

The Appalachian Power Company (APCo), which operates a steam electric power plant within the designated area of the Clinch River near Carbo, Virginia, intermittently uses chlorine as an anti-biofouling agent, appealed the adoption of the amended standards to the Circuit Court of the City of Roanoke pursuant to Code §§ 62.1-44.24 and 9-6.14:16. The circuit court ruled that the standards were invalid because the SWCB failed to hold an evidential hearing before amending the water quality standards as required by Code § 9-6.14:8. The SWCB appeals that ruling, contending that it satisfied the statutory requirement for an evidential hearing by providing APCo an opportunity to request an evidential hearing; alternatively, SWCB contends that APCo was not harmed by the failure to hold an evidential hearing. For the reasons that follow, we affirm the trial court's decision.

The SWCB is charged with the duties to "protect existing high quality state waters and restore all other state waters to such condition of quality that any such waters will permit all reasonable public uses and will support the propagation and growth of all aquatic life . . . which might reasonably be expected to inhabit them." Code § 62.1-44.2(1). To enforce that policy, the SWCB is empowered to establish standards of water quality, Code § 62.1-44.15(3a), and to adopt regulations necessary to enforce them, Code § 62.1-44.15(10). As part of a mandated triennial review of its standards, Code § 62.1-44.15(3a), the SWCB proposed to amend its water quality standards restricting the discharge of chlorine by prohibiting discharges exceeding 20,000 gallons per day into waters containing trout or threatened or endangered species. The pearly shelled mussels have been classified endangered under federal and state regulations. 50 C.F.R. § 17.11 (1988); VR 325-01-1, § 13(6). Studies conducted by the SWCB had shown that chlorine discharged into the Clinch River is highly toxic to the endangered mussels and that virtually no mussels exist in the Clinch River for approximately 20 miles downstream from the Carbo plant. The SWCB was further concerned about water quality standards from chlorine discharges due to a number of chlorine spills which have occurred on rivers throughout Virginia, causing massive fish kills.

 Code § 62.1-44.15(3b), part of the basic law which governs the SWCB, defines the procedure by which the SWCB may amend its water quality standards and provides that it shall do so according to the Administrative Process Act (APA), Code § 9-6.14:1 *et seq.* Under the APA, before a state agency may promulgate a regulation,[1] Code § 9-6.14:7.1 requires that it set guidelines for soliciting input of the public and of interested parties into the formation and development of its regulations. This stage, which is denominated an informational hearing, allows public participation in the formation of an agency's policies and agency dissemination to the public of information about the proposals. A second requirement of the APA, Code § 9-6.14:8, provides that an agency *may* conduct formal evidential hearings before exercising its authority to promulgate a regulation; however, the Code

---

[1] Code §§ 62.1-44.15(3a) and (10) distinguish between "Regulations" and "Standards" as defined by Code §§ 62.1-44.3(16) and (17). However, for purposes of the APA, Code § 9-6.14:1 *et seq.*, a "standard" is a "rule" or "regulation" as defined in Code § 9-6.14:4(F).

section also provides that "the agency *shall* always do so where the basic law requires a hearing." Thus, in determining whether an evidential hearing is mandatory or discretionary, the APA provides that the basic law governing the agency shall control. Code § 62.1-44.15(3a), part of the basic law governing the SWCB, provides the board "*shall* . . . hold hearings as hereinafter provided for the purpose of . . . adopting, modifying, or cancelling such standards."[2] Thus, since the law requires the SWCB to hold an evidential hearing, the issue in this case is the meaning of the term "evidential hearing" and whether the SWCB complied with that requirement.

On APCo's appeal, the circuit court ruled that SWCB failed to hold a formal evidential hearing as required by its basic law and therefore its attempt to promulgate new water quality standards and to designate the section of the Clinch River as a critical habitat were invalid. The SWCB appeals that ruling, contending that it satisfied the requirement for an evidential hearing because APCo, which had participated in the informational hearings, had the opportunity to request a further evidential hearing but did not do so. Further, the SWCB argues that even if it was required to convene a formal hearing, APCo cannot be heard to complain because it had the opportunity to submit evidence as if a formal hearing had been convened and, thus, was not harmed by the omission.

We recount the steps taken by the SWCB to adopt or amend its water quality standards. The SWCB, in an effort to comply with its basic law and the APA, gave notice to the public and interested parties that it planned to conduct public hearings to solicit comment on proposed amendments to the water quality standards for chlorine. In August 1987, public hearings regarding the proposed standards were held in Woodbridge, Roanoke and Williamsburg, Virginia. APCo representatives attended and spoke at the Roanoke hearing. APCo later submitted a 39 page written comment addressing the proposed chlorine standard and designation of outstanding state resource waters. The SWCB closed pub-

---

[2] Code § 62.1-44.15(3a) was amended by 1989 Acts of Assembly during the pendency of this suit to provide that "upon the request of an effected person or upon its own motion, [the SWCB shall] hold hearings pursuant to § 9-6.14:8 [evidential hearings]." Acts 1989, c. 389, l. 2 provides that the act shall not affect pending litigation to which the State Water Control Board is a party.

lic comment on August 21, 1987. At its next quarterly meeting on September 29, the SWCB adopted a series of amendments proposed during the triennial review, including the two at issue. These amendments were adopted on October 7, 1987, to become effective on November 25, 1987. On November 6, 1987, APCo filed a notice of appeal to the Circuit Court of the City of Roanoke, challenging the board's new standard for Chlorine in Surface Waters (VR 680-21-01.11) and the new designation of Outstanding State Resource Waters (VR 680-21-07.2).

On appeal the trial court granted APCo's motion for summary judgment, holding that the SWCB failed to hold an evidential hearing as required by Code §§ 62.1-44.15(3a) and (b) and 9-6.14:8. The trial court found the failure to conduct such hearings a reviewable question of law as contemplated by Code § 9-6.14:17. Based on these rulings, the trial court, pursuant to Code § 9-6.14:19, suspended the enforcement of the two water standards, set them aside, and remanded the matter to the SWCB for further proceedings.

 Under the APA, the interpretation and enforcement of water quality standards and stream designation by the SWCB are presumed valid, and the burden is on APCo to rebut this presumption. *See* Code § 9-6.14:17; *see also Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 243, 369 S.E.2d 1, 7-8 (1988); *Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va. App. 414, 426, 358 S.E.2d 722, 729 (1987); *Roanoke Memorial Hosp. v. Kenley*, 3 Va. App. 599, 603, 352 S.E.2d 525, 527 (1987). However, "[w]here the issue falls outside the specialized competence of the agency, such as constitutional and statutory interpretation issues, little deference is required to be accorded the agency's decision." *Johnston-Willis, Ltd.*, 6 Va. App. at 246, 369 S.E.2d at 9. Thus, "even though an agency's finding of fact may be supported by substantial evidence in the record, it may be subject to reversal because the agency failed to observe required procedures or to comply with statutory authority." *Id.* at 243, 369 S.E.2d at 7. Therefore, even though SWCB takes the position that it complied with its basic law by providing APCo an "opportunity to request" an evidential hearing, we do not accord that position any weight.[3] We, like the circuit court, are free to construe and determine com-

---

[3] SWCB relies upon the Revisor's Note to Code § 9-6.14:8 which states, "But even where an evidential proceeding is required, note that the agency need not always hold one

pliance with the statutes governing adoption of administrative regulations irrespective of the agency's construction, and we must determine what the Code requires. Therefore, in order for APCo to prevail, it has the burden to establish that the SWCB failed to hold an evidential hearing in the manner required by Code §§ 9-6.14:8 and 62.1-44.15(3a) and (3b). The SWCB concedes that it did not formally convene an evidential hearing but argues that it satisfied the requirement by affording APCo an opportunity to ask for one. Alternatively, the SWCB contends that the failure to hold an evidential hearing did not harm APCo.

■ The SWCB's basic law, Code § 62.1-44.15(3a), specifically states that it shall "hold hearings" before it promulgates its water standards. Code § 9-6.14:4(E) provides:

"*Hearing*" means agency processes other than those informational or factual inquires of an informal nature provided in Code §§ 9-6.14:7.1 and 9-6.14:11 of this chapter and includes only (i) opportunity for private parties to submit factual proofs in formal proceedings as provided in § 9-6.14:8 of this chapter in connection with the making of regulations or (ii) a similar right of private parties or requirement of

but may give interested persons an '*opportunity to request*' one and, if there is no demand therefor, need not undertake such a trial-like proceeding." (emphasis added.)

We find no support for this position in the statute which provides that the agency "*shall always* do so [that is, give interested persons 'an opportunity to participate' in a public evidential hearing] where the basic law requires a hearing." The mandatory language which requires the agency to provide "an opportunity to participate" is significantly different from providing "an opportunity to request" a hearing, which transfers the onus upon the private party to initiate the hearing rather than upon the agency. In fact, the evidential hearing is the vehicle created by Code § 9-6.14:8 by which the formal record which serves as the basis for adopting the standard is preserved. Code § 9-6.14:8 provides that the agency "shall promulgate [the standard] only upon (i) its findings of fact based upon the record of evidence made pursuant to [the evidential hearing]." Where the statutory language is clear and unambiguous, the plain meaning of the statute will control, *Marsh v. City of Richmond*, 234 Va. 4, 11, 360 S.E.2d 163, 167 (1987), and take precedence over Revisor's notes.

Furthermore, the 1989 amendment to Code § 62.1-44.15(3a) which changes the requirement in the basic law that the SWCB "shall" hold hearings to provide that evidential hearings pursuant to § 9-6.14:18 shall be required only "upon the request of an affected person" supports the construction that the basic law mandated an evidential hearing. Had the change been merely to clarify existing law rather than effect a change the provisions that the amendment would not apply retroactively to pending litigation would have been unnecessary. *Wisniewski v. Johnson*, 223 Va. 141, 144, 286 S.E.2d 223, 225 (1982) (a statutory amendment is presumed to be a change in law).

public agencies as provided in § 9-6.14:12 hereof in connection with case decisions.

Accordingly, under its basic law, the SWCB is required to hold a formal evidential hearing to receive any probative evidence on any relevant fact pursuant to Code § 9-6.14:8 before it could exercise its authority in setting state water quality standards.

The purpose of the evidential hearing is further explained in Code § 9-6.14:8, which provides that while the hearing is to formally receive any probative evidence into the record, it may be limited "to the trial of factual issues directly relevant to the legal validity of the proposed regulation in any of the relevant respects outlined in § 9-6.14:17" which involve errors of law, including, but not limited to, scope of authority, compliance with law, adherence to procedure, and sufficiency of the evidence. The statute details specific obligations for conducting the evidential hearing, including who shall preside, admission of evidence, including written material, requirements for verbatim recording and transcription, availability of the record, general notice by publication, and authorization that the evidential hearing can be conducted in conjunction with the public informational hearing provided that separate records of the proceedings are maintained. Thus, while the agency may conduct the public informational and evidential hearings within the same proceeding, provided the published notice provides for both, the evidential hearing serves the indispensable function of preserving a formal record of those issues which are subject to judicial review under Code § 9-6.14:17. *See Johnston-Willis, Ltd.,* 6 Va. App. at 241-42, 369 S.E.2d at 6-7; *Roanoke Memorial Hosp.,* 3 Va. App. at 603, 352 S.E.2d at 527. Accordingly, we affirm the ruling of the trial court that the SWCB failed to comply with the requirements of Code §§ 9-6.14:8 and 62.1-44.15(3a) by failing to hold an evidential hearing in order to promulgate its regulations.[4]

---

[4] On September 27, 1987, pursuant to Code § 62.1-44.11, the SWCB held its quarterly meeting, at which it enacted emergency regulations virtually identical to those declared invalid. Governor Baliles signed the emergency regulations on September 8, 1988, and the regulations became effective on September 9, 1988, when the SWCB filed the regulations, pursuant to Code § 9-6.14:19, with the Registrar of Regulations. Those regulations have been enforced during the pendency of this appeal.

■ The SWCB asserts that even if it failed to hold the evidential hearing required by the APA and its basic law, such omission was harmless error insofar as APCo was concerned. The SWCB argues that APCo can demonstrate no harm from the SWCB's failure to conduct an evidential hearing because APCo attended the informational hearing, submitted its written report, and was provided every opportunity to submit evidence and advocate its position. While the trial court made a specific finding that the error was not harmless, we hold that when an agency fails to conform to required statutory authority when enacting its regulations, an affected party may successfully challenge the regulations without the necessity of showing that it was harmed by the agency's failure to comply with the law.[5] The regulation is invalid and the agency's effort to enforce it exceeds its statutory authority. *Johnston-Willis, Ltd.*, 6 Va. App. at 243, 369 S.E.2d at 7-8. Accordingly, we affirm the trial court's ruling that the SWCB's regulations, VR 325-01-1, § 13 (1987) and VR 680-21-07.2 (1987), are invalid and unenforceable.

*Affirmed.*

Hodges, J., concurred.*

Koontz, C.J., dissenting.

I respectfully disagree with the majority's interpretation of the statutory scheme embodied in the pertinent statutes which control the issues presented by this appeal. Specifically, I disagree with the majority determination that the statutory scheme prior to the 1989 amendment of Code § 62.1-44.15(3a) imposed upon the State Water Control Board (SWCB) a two-step duty in promulgating its standards of quality for state waters, first to hold public hearings of an informal and informational nature (Code § 9-6.14:7.1(B)), and second to hold evidential hearings (Code § 9-6.14:8). In my view, the SWCB was required to hold the public informational hearing and to afford APCO an opportunity to request a public evidential hearing. APCO's failure to request an

---

[5] *See* Code § 9-6.14:17(2). The failure to conduct a required evidential hearing before promulgating regulations is a failure to comply with statutory authority and must be distinguished from a judicial challenge to an agency action in failing to observe required procedure, to which the harmless error analysis applies. *See* Code § 9-6.14:17(3).

* Judge Hodges participated in the hearing and decision of this case prior to the effective date of his retirement on October 31, 1989.

evidential hearing negated the requirement to conduct such a hearing. In short, I find nothing within the provisions of these statutes which reflects a legislative intent to require the SWCB to conduct an evidential hearing without a request to do so by an affected or interested party. Rather, I believe it was the legislative intent to mandate such a hearing only upon such a request.

At the time of these proceedings, Code § 62.1-44.15(3a) provided in pertinent part: "The Board *shall*, from time to time, but at least once every three years, *hold hearings as hereinafter provided* for the purpose of reviewing the standards of quality, and, as appropriate, adopting, modifying, or cancelling such standards." (emphasis added). Subsection (3b) provided: "Such standards . . . are to be adopted or modified, amended or cancelled in the manner provided by the Administrative Process Act (§ 9-6.14:1 *et seq.*)." Code § 9-6.14:8 provides, in pertinent part, that the agency "may *conduct or give* interested persons *an opportunity to participate in a* public *evidential proceeding*; and the agency shall always *do so* where the basic law requires a hearing." (emphasis added). Reading these Code sections together, the majority concludes that the phrase "shall . . . hold hearings" in Code § 62.1-44.15(3a) coupled with the phrase "the agency shall always do so where the basic law requires a hearing" in Code § 9-6.14:8 mandates that the SWCB hold an evidential hearing in every instance that it proposes to amend its standards, regardless of whether an interested or affected party, such as APCO in this case, requests a formal evidential hearing. Such an interpretation would require the SWCB to conduct an evidential hearing even when there might be no participants or issues to be resolved. In my view, such a result was not intended by the legislature, nor is such an interpretation required by the language of these statutes.

Because the term "hearing" is not defined in the basic law, Code § 9-6.14:8 of the Administrative Process Act (APA) is controlling. The majority maintains that the mandate "shall always do so" in that section refers only to "conduct . . . a public evidential proceeding." In my view, the mandate "shall always do so" modifies both the mandate to "conduct . . . a public evidential proceeding" as well as the mandate "give interested persons an opportunity to participate in a public evidential proceeding." If "an opportunity to participate in a public evidential proceeding" means the same as "shall conduct" such a hearing, the former is

meaningless. For that reason, I believe the legislature intended to give each part of the phrase a separate meaning. Consequently, I interpret the statutory language to mean that the SWCB is required to hold an evidential hearing upon the request of an interested person; without such request, the agency need not engage in a futile act. In my view, such an interpretation is consistent with and is the logical extention of the statutory requirement imposed upon the agency to hold a public informal and informational hearing so that issues can be raised and identified for which interested persons could determine to request an evidential hearing.

To bolster its interpretation of these code sections, the majority in footnote three draws a distinction between "an opportunity to participate" and "an opportunity to request" a hearing, and concludes that the latter transfers the "onus" to the private party to initiate the hearing. I agree with that distinction, but I disagree that such an "onus" offends the statutory scheme within the APA. The majority finds this onus offensive because:

> the evidential hearing is the vehicle created by Code § 9-6.14:8 by which the formal record which serves as the basis for adopting the standard is preserved. Code § 9-6.14:8 provides that the agency "shall promulgate [the standard] only upon (i) its findings of fact based upon the record of evidence made pursuant to [the evidential hearing]."

In my view, Code § 9-6.14:17 expressly recognizes that an evidential hearing is not the only vehicle by which the basis for adopting the standard may be preserved.

> Where there is no such agency record so required and made, any necessary facts in controversy shall be determined by the court upon the basis of the agency file, minutes, and records of its proceedings under § 9-6.14:7.1 or § 9-6.14:11 as augmented, if need be, by the agency pursuant to order of the court or supplemented by any allowable and necessary proofs adduced in court . . . .

Moreover, Code § 9-6.14:8, in addition to referring to the promulgation of standards by an agency upon its findings of fact based upon the record of evidence made pursuant to [the evidential hearing] also provides that it do so upon "(i) . . . facts of which judicial notice may be taken, (ii) statements of basis and purpose

as well as comment upon data received in any informational proceedings held under § 9-6.14:7.1 and (iii) the conclusion or conclusions required by the terms of the basic law under which the agency is operating." These additional provisions, I believe, expressly recognize that the SWCB in some instances may promulgate standards or preserve a record for judicial review without holding evidential hearings.

Finally, I do not agree with the majority's conclusion that the 1989 amendment to Code § 62.1-44.15(3a) was a change in the basic law. When interpreting a statutory amendment there is a presumption that the legislature intended to effect a change in the law; however, that presumption may be rebutted by evidence that the legislative amendment was intended to interpret or clarify the original act. 1A *Sutherland Statutory Construction* § 22.30 at 266 (C. Sands 4th ed. 1985). "When amendments are enacted soon after controversies arise 'as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act — a formal charge — rebutting the presumption of substantial change.' " *Boyd v. Commonwealth*, 216 Va. 16, 20-21, 215 S.E.2d 915, 918 (1975)(quoting 1A *Sutherland Statutory Construction* § 22.30 at 184 (C. Sands 4th ed. 1972)). Further, "[a]n amendment of an unambiguous statute indicates a purpose to change the law, whereas no such purpose is indicated by the mere fact of an amendment of an ambiguous provision." 1A *Sutherland Statutory Construction* § 22.30 at 266 (C. Sands 4th ed. 1985).

As this appeal illustrates, prior to the 1989 amendments the provisions in Code § 62.1-44.15(3a) were ambiguous. Moreover, the 1989 amendment followed the enactment of emergency standards, signed by Governor Baliles, which were virtually identical to those declared invalid in the circuit court. We may assume that at the time of the amendment the legislature was mindful of the revisor's note to Code § 9-6.14:8, which interpreted the statute to mean that a formal evidential proceeding was necessary only when requested by an interested or affected party and was not mandatory in every instance that the SWCB sought to change its standards. Thus, in my view, by enacting the amendment the legislature intended merely to clarify the language of the original act. For this reason, I disagree with the majority's conclusion in footnote three that because the legislature stated that the amend-

ment would not affect pending litigation the obvious intent of the amendment was to effect a change in the law. In my view, the amendment does not affect pending litigation in any event since it only serves to clarify the prior ambiguous statutory language.

For the foregoing reasons, I respectfully dissent.