**Richmond**

COMMITTEE OF CONCERNED CITIZENS FOR PROPERTY
RIGHTS, et al.

v.

CHESAPEAKE BAY LOCAL ASSISTANCE BOARD, et al.

No. 0134-92-2

Decided February 9, 1993

COUNSEL

James S. Krein, Richard R. Nageotte (Nageotte & Krien, on briefs), for appellants.

Roger L. Chaffe, Senior Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.**—The Committee of Concerned Citizens for Property Rights (Committee) appeals the decision of the Spotsylvania County Circuit Court that found (1) that the Chesapeake Bay Local Assistance Board (Board) properly determined that an emergency existed pursuant to Code § 9-6.14:4.1(C)(5) to justify adopting "emergency regulations;" (2) that the approval by the Governor of such emergency regulations after their adoption was *de minimis* error; and (3) that such emergency regulations do not constitute retroactive rulemaking. For the reasons stated below, we affirm.

I.

The Chesapeake Bay Preservation Act (the Act), Code §§ 10.1-2100 *et seq.*, was enacted by the General Assembly in 1988 and became effective on July 1 of that year. The Act mandated the development of a comprehensive scheme for the protection of the Chesapeake Bay through state and local regulations developed in Tidewater Virginia as defined in Code § 10.1-2101. The Act created the Board

and the Chesapeake Bay Local Assistance Department (the Department) to provide staffing for the Board. The Board was directed by the legislature to establish within one year or by July 1, 1989 regulatory criteria for protection of the Bay, consistent with the Act. *See* Code § 10.1-2107(E).

The Board, by regulations, was to establish criteria for use by local governments in order to accomplish two major objectives: (1) to establish Chesapeake Bay preservation areas for ecological protection; and (2) to establish a program for use of the Board's criteria in regulating land use and development in those areas. The Board, commencing upon its appointment in 1988 and with the assistance of the Department, began a massive regulatory process designed to result in the timely adoption of criteria as required by the Act.

Throughout late 1988 and early 1989, the Board conducted numerous meetings and public hearings to seek input from interested citizens regarding the content of the proposed criteria. On June 28, 1989, the Board adopted regulatory criteria. As required by the Act and by the Virginia Administrative Process Act (VAPA), Code § 9-6.14:9(D), these regulations (the 1989 regulations) were filed with the Registrar of Regulations on July 12, 1989.

In August 1989, then Governor Baliles, as provided in the APA, *see* Code § 9-6.14:9.1(C), suspended the regulatory process by calling for additional procedures on certain narrowly defined portions of the June 28, 1989, and September 13, 1989, regulations. In response to the additional public comments received as a result of the Governor's action, the Board amended the 1989 regulations and re-adopted them as amended.

In July and November 1989, the Committee filed suit in the Circuit Court of York County challenging the validity of the regulations. On November 15, 1990, the York County Circuit Court entered a nonfinal consolidated decree invalidating and remanding the June 28, 1989, and September 13, 1989, regulations on procedural grounds.

The Board had submitted Proposed Regulations to the Registrar of Regulations on April 5, 1989, for public notice and comment. Despite this substantial notice and comment period, the York County Circuit Court found that the Proposed Regulations, now called the June 28, 1989 regulations, were never in effect because the Board never assigned an effective date as required by VAPA, Code § 9-6.14:9.3, and

because the Board failed to submit the proposed changes to the June 28, 1989 regulations for an additional sixty day public notice and comment period, in violation of the Board's *Public Participation Procedure Regulations*. The September 13, 1989 regulations, which replaced the June 28, 1989 regulations, were also declared void for the Board's failure to observe another additional public notice and comment period declared by the Governor on August 16, 1989, pursuant to the VAPA, Code § 9-6.14:9.1(C).

With no effective regulations, the Board on November 15, 1990 took action to re-promulgate the regulations on an emergency basis pursuant to the VAPA, Code § 9-6.14:4.1(C)(5). The emergency regulations at issue in this litigation took effect when filed with the Registrar of Regulations on December 10, 1990, pursuant to Code § 9-6.14:9(A).

While the adoption of the emergency regulations between November 15, 1990 and December 10, 1990 was pending, the Board proposed and promulgated new regulations (1991 regulations) pursuant to Article 2 of VAPA, Code §§ 9-6.14:7.1 *et seq.* The adoption process was completed and on July 24, 1991, the Board adopted the 1991 regulations to become effective October 1, 1991. The emergency regulations were superseded by the 1991 regulations and have not been in effect since.[1]

## II.

■ The appellant has the burden to demonstrate an error of law subject to review. Code § 9-6.14:17. We hold that the appellant has failed in its burden and we agree with the trial court's finding that the Board did not act unlawfully in determining an "emergency" to exist under Code § 9-6.14:4.1(C)(5) to warrant dispensing with the public notice and comment requirements of Code § 9-6.14:7.1.

"[T]he court must review the facts in the light most favorable to sustaining the Board's action and 'take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'"

---

[1] Appellees filed a motion asking that this appeal be dismissed on the ground that the question was moot. A panel of this Court, relying upon *Commonwealth ex rel. State Water Control Board v. Appalachian Power Co.*, 12 Va. App. 73, 402 S.E.2d 703 (1991), aff'g 9 Va. App. 254, 386 S.E.2d 633 (1989), denied the motion.

*Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va. App. 414, 427, 358 S.E.2d 722, 729 (1987) (quoting Code § 9-6.14:17).

> "The court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion.' . . . This standard is designed 'to give great stability and finality to the fact-finding process of the administrative agency.'"

*Atkinson v. Virginia Alcoholic Beverage Control Comm'n*, 1 Va. App. 172, 176, 336 S.E.2d 527, 530 (1985) (citations omitted).

■ The Board found that an emergency existed when the June 28, 1989 and September 13, 1989 regulations were invalidated by the York County Circuit Court. Because of the "emergency," the Board dispensed with the public notice and comment process pursuant to Code § 9-6.14.4:1(C)(5), which states that emergency regulations determined by the agency are exempted from the public participation process. *See* Code § 9-6.14:7.1(A).

The Board stated the justification for adopting the emergency regulations in the Preamble to the Emergency Regulations. The Board stressed that any delay in the adoption of such regulations

> will potentially result in a significant quantity of shoreline property being developed without application of the Regulations, preventing the attendant improvements in runoff water quality and potentially resulting in additional degradation of the water quality of the Chesapeake Bay and its tributaries.
>
> Therefore, in order to meet the intent of the Act that the Chesapeake Bay and its tributaries be protected as soon as possible and to minimize further delay of implementation of the Chesapeake Bay Preservation Area Designation and Management Regulations, the enactment of an emergency amendment to those Regulations is both vital and appropriate. Furthermore, due to local efforts conducted thus far in time, this action will not cause undue hardship for local governments.

We cannot hold as a matter of law that when "considering the record as a whole, a reasonable mind would necessarily come to a different conclusion" concerning the agency's finding of an emergency. *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983).

Therefore, applying the above standard of review to the facts of this case, we hold that the Committee has not met its burden to demonstrate an error of law subject to review as mandated by Code § 9-6.14:17.

### III.

■ "The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court. Such issues of law include: . . . (iii) observance of required procedure where any failure therein is not mere harmless error . . . ." Code § 9-6.14:17. Thus, the Committee has the burden to demonstrate an error of law, such as the Board's failure to observe required procedure, and to show that such error is not harmless.

After reviewing the record to determine if the Governor gave prior approval of the emergency regulations as required by Code § 9-6.14:4.1(C)(5), the Spotsylvania County Circuit Court determined that any violation of the statute was "*de minimis*" in light of the fact that the Governor approved the regulations in writing within a week after their adoption.

The Spotsylvania County Circuit Court correctly found that, although the Governor did not sign the emergency regulations that were adopted on December 3, 1990, until December 7, 1990, any violation of Code § 9-6.14:4.1(C)(5) was harmless. If the Governor had signed the emergency regulations moments before their adoption, the result would have been the same. In neither event would there have been an opportunity for additional public comment, which is the basis for appellants' complaint.

Thus, the Committee has failed to show any injury caused by the Governor's approving the emergency regulations on December 7, 1990, which exempted the regulations from the public notice and comment requirements of Code § 9-6.14:7.1. The Spotsylvania County Circuit Court found that the emergency regulations were based on the June 28, 1989 and September 13, 1989 regulations. Both of these 1989 regulations had been subject to a "substantial amount of public input and comment," from late 1988 until early 1989, with numerous meetings and public hearings. The injury that the Committee alleges is that the Governor did not give prior approval to the emergency regulations

to remove the otherwise mandated public notice and comment requirements.[2] Even if this Court were to find that the regulations were not valid "emergency" regulations, because the Governor signed them four days after their adoption, the public notice and comment requirements of Code § 9-6.14:7.1 were still substantially complied with. Thus, any error committed would be harmless.

■ Furthermore, the emergency regulations, by their very nature, are short-lived: "Such rules or regulations shall be limited to no more than twelve months in duration." Code § 9-6.14:4.1(C)(5). Federal decisions relating to the notice and comment period exemption for federal regulations are not applicable to interpretation of state regulations. Unlike federal regulations, these state emergency regulations expire within twelve months.[3] Therefore, the line of cases dealing with the "good cause" requirement to dispense with public notice and comment within the Federal Administrative Procedure Act are not helpful in this case dealing with twelve-month long or temporary state regulations. Because the state emergency regulations are statutorily short-lived, there is no need for a "good cause" requirement, as defined in the federal cases that deal with emergency regulations of undefined duration; instead, the Governor's prior approval is the appropriate safeguard. *See* Code § 9-6.14:4.1(C)(5).

The emergency regulations at issue in this case took effect December 10, 1990, and were in effect for less than twelve months.

---

[2] The trial court refused to consider an affidavit of Robert M. Blue, Special Assistant for Policy to Governor Wilder, which stated that the Governor gave prior verbal approval of the emergency regulations that were offered by the Board. The court decided that, as a matter of law, even if the Governor did not give prior approval, the error was harmless.

[3] Federal regulations are classified as emergency regulations if they come within the 5 U.S.C. § 553(6)(B) exemption. This exemption from the public notice and comment requirements of § 553 is properly invoked when an emergency exists. If there is no emergency, the requirements of § 553 must be satisfied. *See Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795 (D.C. Cir. 1983). However, in § 553 there is no mention of how long such "emergency regulations" may last. Accordingly, Congress has seen fit to have a "good cause" requirement to justify an emergency to dispense with the public notice and comment requirements, because these federal emergency regulations are apparently unlimited in duration. *See* 5 U.S.C. § 553; *National Ass'n. of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 621 (D.C. Cir. 1980). However, the Virginia Code section dealing with similar emergency regulations has placed a time limit on the life of such regulations. Code § 9-6.14:4.1(C)(5).

The Board proposed new regulations in 1991 that took effect October 1, 1991, and superseded the emergency regulations as of that date.

## IV.

Next, we consider whether the emergency regulations were retroactive and violated existing rights. Because there is no express intention in the language of the VAPA that certain agencies' decisions be applied retroactively, we must consider whether the Board violated the Act by engaging in retroactive rulemaking. Code §§ 9-6.14:1 *et seq.*; *Shilling v. Commonwealth*, 4 Va. App. 500, 359 S.E.2d 311 (1987).

The Committee contends that two provisions of the emergency regulations that became effective on December 10, 1990 apply retroactively to October 1, 1989 and affect vested property rights.

█ The Board's regulations "shall not affect vested rights of any landowner under existing law." Code § 10.1-2115.

The general rule is that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits and especially vested rights, unless the intention that it shall so operate is expressly declared.

*Shilling v. Commonwealth*, 4 Va. App. 500, 507, 359 S.E.2d 311, 314 (1987).

The first provision at issue states that the reserve sewage disposal site requirement shall not apply to any lot or parcel recorded prior to October 1, 1989.[4] The second provision at issue states that any lots recorded prior to October 1, 1989 may maintain a smaller buffer area than that required on lots recorded on or after October 1, 1989. The trial court correctly found that these exemptions for persons without notice of the regulations, who had recorded their land prior to October 1, 1989, were effective "grandfather clauses." These portions of the emergency regulations serve to protect vested rights of landowners who recorded prior to October 1, 1989, because of their lack of notice of such regulations affecting their land.

---

[4] These provisions are found in Part IV of the Emergency Regulations entitled "Land Use and Development Performance Criteria." Under this section, the specified criteria, such as these two provisions, become mandatory upon the localities in order to supplement the various planning and zoning concepts already employed by the local governments.

The Board decided to "grandfather" those landowners who had no notice of the regulation promulgation process by setting the cut-off date as October 1, 1989. The Board, by its action, protected the landowners who did not have notice and applied the regulations only to those landowners who were on notice by recording their interests in land after October 1, 1989. "A legitimate grandfather provision operates prospectively only, and would protect the land from future zoning changes." *County of Fairfax v. Fleet Indus. Park Ltd. Partnership*, 242 Va. 426, 431, 410 S.E.2d 669, 672 (1991).

On the other hand, those persons who recorded their interests on or after October 1, 1989, had notice of the regulations because of the promulgation process required by Code § 9-6.14:7.1, and were thus subject to the regulations as adopted.

If this Court were to hold that the provisions of the emergency regulations were invalid because of the October 1, 1989 date, the regulations would apply to all the owners of the land covered by the Act. We believe the Board's decision to create a cut-off date was legitimate. This cut-off date was not retroactive rulemaking, but was rationally related to the purpose of the Act and reasonably created a class of owners to whom the regulations would not apply—those who were not on notice of the proposed regulations when their interests were recorded. We thus find no reason to reverse the Spotsylvania County Circuit Court's ruling that the cut-off date was helpful to the landowners and that there was no deprivation of vested rights. Therefore, we hold that the Board did not engage in retroactive rulemaking.

Finding no error in the judgment of the trial court, we affirm.

*Affirmed.*

Elder, J., and Fitzpatrick, J., concurred.