## CIRCUIT COURT OF THE CITY OF RICHMOND

The Hillhaven Corp.

v.

Commonwealth of Virginia,
ex rel. Department
of Medical Assistance
Services

October 28, 1993

Case No. HC-783

BY JUDGE MELVIN R. HUGHES, JR.

This is an appeal noted by The Hillhaven Corporation from a decision of the Virginia Department of Medical Assistance Services (DMAS) denying medicaid reimbursement. The Hillhaven Corporation was denied reimbursement for depreciation and interest expense and sales commissions incurred in the purchase of two nursing home facilities. Hillhaven has moved for summary judgment. DMAS opposes the motion.

There is no dispute regarding the underlying facts that give rise to issues in the case. On or about December 19, 1983, Hillhaven purchased two fully equipped Virginia healthcare facilities. Under an agreement with Geri-Aid Affiliates, Hillhaven agreed to purchase all real and personal property of the Holmes Convalescent Center, a 163-bed licensed facility located in Virginia Beach, Virginia. Under an agreement with Hillcrest Convalescent Home, Hillhaven agreed to purchase all real and personal property of Nansemond Convalescent Center, a 134-bed licensed facility located in Suffolk, Virginia. In both agreements, the personal property purchased included (1) equipment once owned by HealthCare Management, Inc., ("HCM") and trans-

ferred to the partnerships by bills of sale, and (2) equipment owned by the respective partnerships.

During the years in question, Holmes and Nansemond participated in the Virginia Medicaid Program. In its Medicaid cost report for the fiscal years ending 1984 through 1986, Hillhaven claimed reimbursement for various costs, including the depreciation and interest charges related to the movable equipment. In addition, Hillhaven claimed as an expense, interest and amortization expenses relating to the movable equipment Hillhaven acquired at each facility. Hillhaven included in its report all the movable equipment it acquired in each transaction in a single depreciation account and depreciated it over a five-year useful life. DMAS requested a detailed listing of the movable equipment. Instead of furnishing a detailed listing, Hillhaven provided two appraisals. Each appraisal apportioned the purchase price between the building, land improvement, equipment, and land. Neither appraisal included a physical inventory of the movable equipment. DMAS asserted that Hillhaven's use of the multiple asset depreciation account was improper because not all of the assets had the same useful life and purchase date and because of inadequate record keeping. Therefore, DMAS decided to disallow the movable equipment related expenses and depreciation in the purchase of the facilities.

Hillhaven entered into commission agreements in connection with the purchase and sale of Holmes and Nansemond. Hillhaven agreed to pay Barry S. Fine and Melvyn Homer a total commission of $125,000 per facility for arranging the sale of the centers to Hillhaven. Fine and Homer are general partners of the partnerships, Hillcrest and Geri-Aid.

For Medicaid reporting and reimbursement purposes, Hillhaven treated the commission fees as capitalized expenses by adding the fees to the cost of the facility. DMAS disallowed reimbursement of these expenses for the following reasons: (1) Fine and Homer were related parties to the sales-purchase transaction, and (2) the commission fees were unnecessary.

### Standard of Review

In reviewing this case, the court must consider that an agency's interpretation is entitled to great weight. *Water Control Bd. v. Appalachian Power Co.*, 9 Va. App. 254, 259, 386 S.E.2d 633, 635 (1989) *aff'd on reh'g*, 12 Va. App. 73, 402 S.E.2d 703 (1991); *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 243, 369 S.E.2d 1, 7–8 (1988);

*see also*, Va. Code Ann. § 9–6.14:17. However, the court may reverse the agency's decision if it is based on inapplicable legal standards. *Slaughter v. Elkins*, 260 F. Supp. 835, 838 (W.D. Va. 1986).

### Depreciation and Interested Expense of Movable Equipment

The procedures required in reimbursing providers of health care are governed by The Nursing Home Payment System of the Virginia Medicaid Assistance Program (NAPS), also referred to as the "Virginia State Health Plan." Under the NAPS, the cost report data needed for reimbursement are those required under medicare unless those requirements are modified under the State Plan. Introduction NAPS (1982) at 1. *See* Appellee's Brief at pp. 8–9. Therefore, Medicare principles will apply unless they have been modified by the State Plan.

Under medicare reimbursement principles, a provider such as Hillhaven must keep complete and verifiable records in order to calculate depreciation for reimbursement purposes. Hillhaven argues that Medicare principles of reimbursement requiring complete and specific documentation have been modified by the Virginia State Plan and are thus inapplicable. This claim is based on § 2.5(D) of the State Plan which requires that a provider's appraisal breakdown of the assets acquired in the purchase of an existing facility be in four categories: land; improvements; buildings; and movable equipment. The State Plan does not specifically address, however, detailed inventory requirements for movable equipment; therefore, it has not modified the Medicare requirements. Thus, the Medicare principles will apply.

Hillhaven also argues that since the use of multiple asset accounts are Generally Accepted Accounting Principles, an appraised value for all the movable equipment in the account as opposed to the appraised value for each piece of equipment is adequate documentation. In reaching that conclusion, appellant relies on the foreword to the PRM which states the following: "For any cost situation not covered by the manual's guidelines and policies, generally accepted accounting principles should be applied." *See* Appellant's brief at 18. However, simply because the PRM allows the use of multiple asset accounts does not eliminate the need to identify each individual asset. *See* Appellee's brief at 9–10, n. 7 (citing the commentary to PRM-15 § 104.9, 1 Medicare and Medicaid guide (CCH) paragraph 4656 at 1642). Furthermore, the opinions and statements of Generally Accepted Accounting Principles (GAAP) are not binding upon Medicare reimbursement

principles. *Id.* at n. 7 (citing the commentary to PRM-15 § 2300, 1 Medicare and Medicaid guide (CCH) paragraph 32034 at 9956).

Hillhaven also argues that lack of inventory is an inadequate basis for denying provider claims. Hillhaven maintains that the only problem relating to inventory that DMAS suggested involved the scrapping of materials and that this problem is infrequent and incidental. *See* Appellant's Brief at 23–24. DMAS has suggested that a detailed inventory is also needed to determine the following: (1) reasonableness of cost, (2) verification of the sale of a fully equipped facility, and (3) use of equipment for the provision of service to Medicaid. The law provides that adequate documentation for auditing purposes be provided.

Because Medicare principles of reimbursement require specific documentation, reimbursement payments should be denied when that documentation is not supplied. Therefore, the Department of Medical Services did not err in denying reimbursement for movable items not specifically documented by Hillhaven.

## The Sales Commissions

### A. *Related Parties; Deference*

Hillhaven claims that little deference should be given to DMAS's decision to deny the sales commissions because in determining the proper treatment of sales commissions, the agency must analyze contract law which is outside its area of expertise. *See* Appellee's Reply Brief at 13 (citing *Memorial, Inc. v. Harris*, 655 F.2d 905 (9th Cir. 1980)).

Hillhaven does not dispute that DMAS has the authority to determine the proper treatment of "related party" sales transactions or to establish regulations governing those transactions. Hillhaven merely contends that the DMAS decision is accorded less deference in making that determination. *See* Appellee's Reply Brief at 12.

According to the parties' briefs, the Provider Reimbursement Manual limits reimbursement for services furnished to a provider by an organization and/or individual related to the provider by common ownership or control. Under this "related party" rule, reimbursement may not exceed the price of comparable services that could be obtained elsewhere. An underlying purpose of this rule is to avoid payment of artificially inflated costs which may be generated from less than arm's length transactions. *Id. See* Appellee's brief at 18.

Control exists where an individual or an organization has the power to maintain substantial influence or control of the other. *See Id.* at 19 (citing PRM-15 § 1002.3).

DMAS contends that Fine and Howard, as agents to both seller and buyer, were related parties to Hillhaven; therefore, reimbursements for commissions paid to them could not exceed the price of comparable services. Hillhaven, on the other hand, claims that Fine and Homer did not control or have common ownership with Hillhaven; therefore, they were not related parties.

Fine and Homer were unquestionably agents of the seller. They were two of the partners of Geri-Aid and Hillcrest, which own the centers sold to Hillhaven. Furthermore, they acted as attorneys-in-fact for the organizations. They became agents for the buyer, Hillhaven, when they entered into commission agreements which compensated them for arranging the sale of the two centers.

According to Hillhaven, Fine and Homer were being compensated for performing the following duties: working with the owners of the properties to secure their agreement of the sale of the facilities; working with Hillhaven to insure the expeditious drafting of the acquisition documents; and working with Hillhaven in its efforts to obtain financing for the sale of the facilities. Through these duties, Fine and Homer became agents for Hillhaven and gained the power to significantly influence or control the actions of Hillhaven.

Hillhaven argues that because the parties were not related *before* the execution of the commission agreement, the related party rules do not apply. However, if a contract creates the potential for influence or control, DMAS will consider that contract as having been made between related organizations. *See* Appellee's Brief at 19 (citing PRM-15, § 1011.1).

Under the related party rule, Hillhaven could only be reimbursed for the price of comparable services. DMAS contends that no comparable services exist because partners of a selling company do not usually take out commissions for themselves, and they do not usually cut out other partners. *See* Appellee's Brief at 22. Hillhaven argues that in a real estate transaction, selling partnerships often compensate certain partners disproportionately for their extra work on the transaction. *See* Appellant's Reply Brief at 18. However, in Fine and Homer's situation, the compensation at issue was not given for extra transaction work done as agents for the seller. The fees were not proportioned by

the partners from the sale price. The compensation was given separate from the buyer to only Fine and Homer for the services given to the buyer in the sale.

Hillhaven also suggests that if they had hired a broker to conduct the sales transactions, they could be reimbursed for those costs. *See* Appellee's Reply Brief at 18. However, in the transaction at issue, Fine and Homer were also agents to the seller; therefore, they were already performing the duties for which they were given a separate, extra compensation by the buyers. Thus, the fees were paid to a related party and were unnecessary expense.

Because Fine and Homer, as agents for Hillhaven and Geri-Aid and Hillcrest, had the power to influence both buyer and seller, the transaction was a related parties transaction. Furthermore, since no comparable services exist, the amount of compensation should be zero. Therefore, DMAS properly denied reimbursement expenses for the sales commissions given to Fine and Homer.

## B. *Unnecessary Costs*

DMAS claims that the sales commissions at issue were not necessary costs because Fine and Homer were already obligated to perform the duties for which they receive the commissions. *See* Appellee's Brief at 22.

As stated previously, Fine and Homer's duties to Hillhaven included securing the sales agreement, working to secure expeditious drafting of the documents, and helping Hillhaven obtain financing to purchase the facilities. Appellee claims that as agents for Geri-Aid and Hillhaven, Fine and Homer already had a duty to perform these functions for these organizations. Hillhaven suggests that as attorneys-in-fact for the seller, Fine and Homer were under no obligation to help Hillhaven obtain industrial bonds or provide other assistance. *See* Appellant's Brief at 31–32. Yet, according to Appellee, having the power of attorney involves a legal duty to "execute and perform all and every act or acts relating to the sale of the real, personal, or mixed property . . . ." *See* Appellee's brief at 22 (citing to Powers of Attorney at 1, attached to Hillhaven's Pre-hearing reply briefs). If this legal duty is in fact a function of the power of attorney, then assisting Hillhaven in financing and other activities would be included in the duties that Fine and Homer were already obligated to perform for the seller.

Because Fine and Homer, as attorneys-in-fact for Geri-Aid and Hillcrest, were already obligated to perform the duties for which they were compensated by Hillhaven, DMAS properly found that the fees were unnecessary.

## Conclusion

The findings of the Department of Medical Assistance Services were properly based on appropriate legal standards; therefore, the agency's decision should be upheld.